# BALLENTYNE *v.* SMITH.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF HAWAII.

No. 216.. Argued March 21, 1907.—Decided April 8, 1907.

The old English rule that in chancery sales, until confirmation of the master's report the bidding would be opened upon a mere offer to advance the price ten per cent has been rejected, and a sale will not be set aside for inadequacy of price unless so great as to shock the conscience or where there are additional circumstances against its fairness; and each case stands upon its own facts.

While the confidence in the stability of judicial sales should not be disturbed, a sale under foreclosure of valuable property, worth at least seven times the amount of the bid, should not be confirmed in the face of an adverse report by the master and the trial court.

THIS is an appeal from a judgment of the Supreme Court of

the Territory of Hawaii, 17 Hawaii, 96, affirming an order of the third judge of the First Circuit Court in the Territory of Hawaii, which refused to confirm a sale of property made by a commissioner under order of court in a foreclosure suit brought by William O. Smith, as trustee, against the Pacific Heights Electric Railway Company, Limited, a Hawaiian corporation, and directed that the property be again offered for sale. The suit was brought to foreclose a trust deed of fifty thousand dollars executed by the railway company to Smith, as trustee, on April 1, 1902, and purporting to convey an electric railway two and one-half miles in length and running up to Pacific Heights, with its equipment of every kind, and also all land and other property conveyed to it by deed from one Charles S. Desky, dated January 25, 1902.

The sale was made on February 4, 1905, for the sum of eleven hundred dollars. It was in bulk of the entire property covered by the mortgage, except a cable and condenser, which were of comparatively little value, and which, for reasons not at all affecting the merits of this controversy, were not sold with the balance of the property. The commissioner who made the sale reported that the amount realized was disproportionate to the value of the property sold, and recommended that it should not be confirmed, but that such further order should be made as to the court should seem meet in the premises. On the hearing of a motion to confirm the sale and objections thereto, the trial court found that the evidence was overwhelming that the actual value of the property was at least seven times the amount at which the property was struck off, that being the highest and best bid therefor.

*Mr. David L. Withington*, with whom *Mr. William R. Castle* was on the brief, for appellants:

The sale should have been confirmed. It was regularly conducted and no fraud, unfairness or irregularity of any kind is alleged.

The single question presented under this head is, whether

inadequacy of price uncoupled with any irregularity and by any circumstances indicating either fraud or unfairness, where it is not claimed that the inadequacy of price is evidence of fraud or unfairness, will authorize the court to set aside the sale.

Before the decision in this case by the court below the point had been settled in Hawaii in a very similar case, cited and approved by the court in its opinion, in which although the court found that the cost of repairing would be greater than the value of the vessel repaired, which is the case of this railroad, it declined to consider it as a wrecking proposition, which is a pure matter of conjunction, which is this case, and after holding that the purpose of confirmation was to determine whether the sale was "fairly and properly conducted." *Smith* v. *City of Columbia,* 11 Hawaii, 709.

*Byers* v. *Surget,* 19 How. 303 and *Graffam* v. *Burgess,* 117 U. S. 180, 186 are reviewed in a more recent case recognizing the rule that other circumstances than mere inadequacy of price are generally necessary. *Schroeder* v. *Young,* 161 U. S. 334.

Many cases sustain the proposition that gross inadequacy of itself is not sufficient.

Nor is mere inadequacy apart from the circumstances of the case of itself, however gross it may be, evidence of irregularity or unfairness. It is only in connection with the circumstances of the case which of themselves might not be sufficient to evidence fraud, irregularity or unfairness that the court may, because of the grossness of the inequality, infer fraud, irregularity or unfairness.

In the case at bar there is no allegation or contention that there was fraud, irregularity or unfairness, or that the inadequacy evidenced any of these.

The discretion to set aside a judicial sale is a legal discretion and not an arbitrary one, and is to be exercised under the rules of law and the exercise of this discretion under an erroneous rule of law is clear error.

The authority of the circuit judge must be exercised and governed by the principles of judicial discretion, under the rules of law. *Ex parte Farmers' Loan & Trust Co.*, 129 U. S. 206; *Blossom* v. *The Milwaukee and Chicago R. R. Co.*, 1 Wall. 655.

*Mr. F. M. Hatch*, with whom *Mr. William O. Smith*, *Mr. A. Lewis, Junior*, and *Mr. L. J. Warren* were on the brief, for appellee Smith:

Authorities from other jurisdictions are clearly in support of the principle here decided and applied, many of them going beyond the extent required to uphold the ruling before us.

As to the use of the alternative "or" instead of "and," whereby it meant that gross inadequacy of price, shocking to the conscience, is sufficient of itself, see: *Graffam* v. *Burgess*, 117 U. S. 180, 191; Rorer, Judicial Sales, § 28; 17 Am. & Eng. Ency. of Law, 2d ed., 1000–1002; *Magann* v. *Segal*, 92 Fed. Rep. 252, 259; *Pewabic Mining Co.* v. *Mason*, 145 U. S. 367; *Fidelity Ins. Co. & S. D. Co.* v. *Roanoke St. Ry. Co.*, 98 Fed. Rep. 476; *Marlett* v. *Warwick*, 18 N. J. Eq. 111.

For cases as to a sacrifice being sufficient see: *Ganst* v. *Moss*, 20 Illinois, 549; *Page* v. *Kress*, 80 Michigan, 85.

A marked distinction should be preserved between cases where the application for a resale is made before and where after confirmation by the court. In the one case the sale is incomplete; in the other, the act of confirmation has made it complete and given the purchaser a vested right which he had not before held. Cases where the application for resale is made after there has been an acceptance of the bid by the court and a confirmation of the sale are not, then, we submit, fair precedents for cases like that at bar, where there has been a rejection of the bid and no confirmation and the application is promptly made.

For other cases as to the rights of a bidder before and after confirmation see: Rorer, Judicial Sales, § 545; Wiltsie, Mortgage Foreclosure, § 469; 2 Jones on Mortgages, §§ 1637, 1641;

*State* v. *Campbell*, 5 S. Dak. 636; and see 10 Wisconsin, 123; 63 N. Car. 379.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The question presented is whether a court of equity may, prior to any order of confirmation, set aside a foreclosure sale of mortgaged property upon the single ground of inadequacy in price; and further, whether, if it has that power, the inadequacy here shown is so gross as to justify such action. It does not appear that there was any fraudulent conduct on the part of the purchaser or any combination to restrict bidding. The sale was duly advertised. It was, so far as disclosed, open and public, and the bid reported was the highest. Nothing in time or place or lack of attendance of buyers is shown. Many of the considerations, therefore, which have influenced courts of equity to set aside judicial sales are not to be found in the present case. Indeed, the only substantial objection is that the amount of the bid is largely below the value of the property. Something may be said on each side of the question; on the one, that a court of equity owes a duty to the creditors seeking its assistance in subjecting property to the payment of debts, to see that the property brings something like its true value in order that to the extent of that value the debts secured upon the property may be paid; that it owes to them something more than to merely take care that the forms of law are complied with, and that the purchaser is guilty of no fraudulent act; on the other, that it is the right of one bidding in good faith, at an open and public sale, to have the property for which he bids struck off to him if he be the highest and best bidder; that if he be free from wrong he should not be deprived of the benefit of his bid simply because others do not bid or because parties interested have done nothing to secure the attendance of those who would likely give for the property something nearer its value; that if the

creditors make no effort and are willing to take the chances of a general attendance, they have no right to complain on the ground that the property did not bring what it should have brought.

In England the old rule was that in chancery sales, until confirmation of the master's report, the bidding would be opened upon a mere offer to advance the price ten per cent; but this rule has been rejected, and now both in England and this country a sale will not be set aside for mere inadequacy of price, unless that inadequacy be so gross as to shock the conscience, or unless there be additional circumstances against its fairness. But if there be great inadequacy, slight circumstances of unfairness in the conduct of the party benefited by the sale will be sufficient to justify setting it aside. *Graffam* v. *Burgess,* 117 U. S. 180, 191, 192. It is difficult to formulate any rule more definite than this, and each case must stand upon its own peculiar facts.

It was said by Mr. Chief Justice Waite, in *Mayhew* v. *West Virginia Oil & Oil Land Company,* 24 Fed. Rep. 205, 215, "that in chancery a bidder at a sale by a master, under a decree of court, is not considered a purchaser until the report of sale is confirmed." See also *Magann* v. *Segal,* 92 Fed. Rep. 252, 255; *Jennings* v. *Dunphy,* 174 Illinois, 86; *Vanbussum* v. *Maloney,* 2 Met. (Ky.) 550, 552; *Sumner* v. *Sessoms,* 94 N. Car. 371; *Branch* v. *Griffin,* 99 N. Car. 173. The power of a court of equity in reference to a resale was affirmed by this court in *Pewabic Mining Company* v. *Mason,* 145 U. S. 349, in which case we said (p. 356):

"The question in this case is whether the master's sale shall stand. It may be stated generally that there is a measure of discretion in a court of equity, both as to the manner and the conditions of such a sale, as well as to ordering or refusing a resale. The chancellor will always make such provisions for notice and other conditions as will in his judgment best protect the rights of all interested, and make the sale most profitable to all; and after a sale has once been made he will,

certainly before confirmation, see that no wrong has been accomplished in and by the manner in which it was conducted."

See also *Schroeder* v. *Young,* 161 U. S. 334.

Now, in the case before us, the commissioner who made the sale reported against its confirmation. It was not confirmed but set aside by the trial court, which found that the evidence was overwhelming that the actual value of the property was at least seven times the amount of the bid. While the testimony is not preserved, it is stated by the Supreme Court of the Territory that it was claimed that only four years before the sale the property cost $78,000, exclusive of the right of way. It was, in fact, bonded less than three years before for $50,000. Speaking in general terms, it consisted of an electric railway two and a half miles in length, two freight cars, two passenger cars, and other appliances for running the railway. All this was sold for $1,100. The action of the trial court in setting aside the sale was approved by the Supreme Court of the Territory.

Under the circumstances we think the order of the Supreme Court should be sustained. While we are disinclined to any action which will impair confidence in the stability of judicial sales, yet with the concurrence of judicial opinion adverse to this sale, considering the amount of property sold, the meager sum bid by the purchaser, the express finding that the overwhelming testimony was to the effect that the property was worth at least seven times more than the sum bid, and also recognizing that the courts which have passed upon this question are much more familiar with the condition of things in Hawaii, and therefore more competent to appreciate the significance of the transactions attending the sale, we have come to the conclusion that it would not be right to reverse the ruling below and confirm the sale.

The judgment of the Supreme Court of the Territory of Hawaii is

*Affirmed.*