GUARANTY TRUST CO. OF NEW YORK v. WILLIAMSPORT WIRE ROPE CO.
No. 959.

District Court, M. D. Pennsylvania.
Sept. 11, 1937.

636

Karl Y. Donecker, of Allentown, Pa., for Jamieson D. Kennedy Committee.

John E. Cupp, and Mortimer C. Rhone, both of Williamsport, Pa., for J. F. A. Comstedt Committee.

Fearey, Allen, Coleman & Johnston, of New York City, O'Malley, Hill, Harris & Harris, of Scranton, Pa., and McCormick, Herdic & Furst, of Williamsport, Pa., for Trustees under First Mortgage.

JOHNSON, District Judge.

The court has for disposition exceptions to the decree nisi confirming the sale of the assets of the Williamsport Wire Rope Company, filed by J. F. A. Comstedt et al., a committee representing certain stockholders of the Williamsport Wire Rope Company, and by Jamieson D. Kennedy et al., a committee representing certain other stockholders.

The Williamsport Wire Rope Company has been operated by equity receivers appointed by the court in September, 1932. On December 28, 1937, upon leave of court, the trustees of the mortgage upon part of the property of the Williamsport Wire Rope Company filed a bill of complaint seeking foreclosure of the mortgage. Subsequently the complainant in the foreclosure proceeding petitioned the court to consolidate the foreclosure proceeding with the original equity proceeding, as both proceedings concerned relevant questions and unnecessary costs and delays would be avoided by consolidation. The court on March 16, 1937, ordered the two cases to be consolidated after a hearing upon the agreement of all parties. Answers to the foreclosure proceedings were filed by the parties in interest. In an opinion, March 25, 1937, the court held that all the answers, including those of Wm. Danley et al., and J. F. A. Comstedt et al., representing stockholders, admitted all the material allegations of the foreclosure bill, and therefore ordered the complainants to submit a decree of foreclosure, in accordance with the prayers of the bill, after five days' notice by registered mail to all parties in interest. After giving the required notice and after mailing copies of the proposed decree to all parties in interest, the complainant submitted a foreclosure decree. No objections to the foreclosure decree were made by any party in interest, and after hearing, the court signed the foreclosure decree, ordering a sale on May 12, 1937, of all the property of the Williamsport Wire Rope Company. Shortly prior to the sale, exceptions to the foreclosure decree were filed by the Comstedt Committee and by Gerard Battenfield et al., representing another stockholders' committee. On account of the pendency of these exceptions, the foreclosure sale was postponed to May 27, 1937. In an opinion of May 26, 1937, (19 F.Supp. 482), all the exceptions to the foreclosure decree were considered and dismissed. On May 27, 1937, in accordance with four weeks' publication of notice of sale and notices of postponement, the sale was held and the properties of Williamsport Wire Rope Company were sold to Chester A. McLain for $3,300,000. McLain later assigned his bid to Bethlehem Steel Company. After report of the sale by the special master, the foreclosure sale was confirmed nisi by the court on June 3, 1937. On June 12, 1937, the Comstedt Committee filed exceptions to the decree nisi confirming the sale, and on June 14, the Kennedy Committee filed exceptions to the decree. These exceptions are now before the court for disposition.

The first three exceptions of the Comstedt Committee are that the court erred in the decree nisi confirming the sale, as to paragraph 5, as to paragraph 6, and as to the entire decree. The exceptant failed to discuss these exceptions either at the oral argument or in the written brief. No reasons or grounds for the exceptions are stated, and the court is unable to determine wherein the exceptants contend that the decree is erroneous.

The fourth exception of the Comstedt Committee is that the court never acquired jurisdiction to consolidate the foreclosure proceeding with the original equity proceeding because (a) there is no diversity of citizenship and no federal question involved in the foreclosure proceeding; (b) the court was without jurisdiction to direct

a sale of property not subject to the mortgage, since the sole relief prayed for in the foreclosure bill was foreclosure of the mortgage; no process issued against any party prior to the final decree of sale, requiring them to show cause why there should not be a consolidation and why an order of sale should not be made as set forth in the final decree.

 It is not contended that the original equity proceeding and the foreclosure proceeding were not relative to the same question or that a consolidation would not avoid unnecessary costs or delay, so that a consolidation would be improper under 28 U.S.C.A. § 734. The contention is that the court did not have jurisdiction of the foreclosure proceeding, and that there could be no consolidation.

The same question was raised on exceptions to the foreclosure decree by the Battenfield Committee, who were represented by the same counsel as in this proceeding. Counsel at that time conceded that the court had jurisdiction of the foreclosure proceeding, but nevertheless the court in its opinion of May 26, 1937, disposed of the exceptions as follows:

"The substance of the exceptions to the foreclosure decree filed by Girard Battenfield et al. is that the court had no jurisdiction of the foreclosure bill because of the lack of a federal question and diversity of citizenship; that the court had no jurisdiction to order a sale of property not subject to the lien of the mortgage because the foreclosure bill related only to the property subject to the mortgage. * * *

"The court, admittedly having jurisdiction of all of the property of the Williamsport Wire Rope Company in the equity receivership, has jurisdiction to determine all claims against the property and the forum where they shall be litigated. 53 C.J. §§ 553, 554; Minot v. Mastin (C.C.A.) 95 F. 734; Gay v. Hudson River Electric Power Co. (C.C.A.) 184 F. 689; Odell v. Batterman (C.C.A.) 223 F. 292, and jurisdiction of a suit to foreclose a mortgage on property in the hands of the receivers, even though the suit lacks diversity of citizenship and a federal question. Toledo, St. L. & K. C. R. Co. v. Continental Trust Company (C.C.A.) 95 F. 497; Morgan's Co. v. Texas Central Railways, 137 U.S. 171, 11 S.Ct. 61, 34 L.Ed. 625; Equitable Trust Co. v. Port Wentworth Terminal Corp. (D.C.) 281 F. 883; Union Trust Co.

v. Jones (C.C.A.) 16 F.(2d) 236; John Murtland, Inc. v. Empire Trust Co. (C.C.A.) 39 F.(2d) 341. It is within the discretion of the court to determine whether the mortgaged and unmortgaged property should be sold as an entirety. See Cyclopedia of Federal Procedure (1930) Vol. 7, §§ 3475, 3488. Spiller v. St. Louis-San Francisco Railway Co. (D.C.) 288 F. 612; Trustees Corp. v. Kansas City, Mexico and Orient Railroad Co. (C.C.A.) 18 F.(2d) 765. In view of the fact that all the respondents to the foreclosure bill requested that the property be sold as an entirety, it may have been an abuse of discretion not to have done so. See People's Pittsburgh Trust Co. v. Hirsch (C.C.A.) 65 F.(2d) 972."

 In its answer to the foreclosure bill, the Comstedt Committee averred "that if there is to be a sale and disposition of any of the property of the said Williamsport Wire Rope Company, all of the said property should be sold and disposed of at the same time, as a going concern, and not sold in segregated parts or parcels. Intervenors further say that a sale of said property in parts or parcels, and not as an entire and complete plant and going business, will result in a lower aggregate price than the property and its business could be sold for as a whole to the destruction of the equities of said preferred and common stockholders." The court then said, in its opinion of May 26, 1937, that the Comstedt Committee "is now estopped from asserting that the property should not be sold as an entirety, especially since it had received a copy of the proposed decree and notice of the hearing thereon, and failed to make any objections thereto at the hearing. In any event, the court is of the opinion that the sale of the property as a going concern is for the best interest of creditors and stockholders and will bring a better price than a sale of segregated parts and parcels."

It should also be noted on this point that counsel for the Kennedy Committee states in his brief: "It must be admitted that in ordering that the sale of Williamsport should include all property, real and personal, wheresoever situate, including accounts receivable and cash, your Honor attempted to act for the good of all parties in interest. The properties of a corporation usually have a maximum value as parts of an aggregate unit continuing as a going concern. Any procedure which allows a creditor of a distressed corpora-

tion to levy upon and sell individual portions of its property would certainly, in most instances, result in a vast amount of economic waste. A sale of a portion of the entire property would probably result in a destruction of its true value and, especially if such a sale were followed by other sales, a disintegration of Williamsport with a concomitant loss of value would result."

■ The part of the fourth exception, to the effect that no process issued against any party in interest requiring them to appear and show cause why there should not be a consolidation and why an order of sale should not be made as set forth in the final decree of sale, is not in accordance with the facts. All parties to the proceedings, including all stockholders' committees which had intervened as well as those which were known to exist but which had not formally appeared or intervened, had notice of every step taken. On September 14, 1936, when leave had been asked to file the foreclosure bill and to make the equity receivers parties defendant, a rule to show cause was granted and notice was specifically directed to be given to Seth T. McCormack, Jr., and Spencer Hill, counsel for the "Majority" and "Minority" Stockholders' Committees, the only stockholders committees then in existence. Answers were filed to the rule by those two committees as well as by the Danley Committee which had intervened on October 10, 1936. On December 10, 1936, all parties in interest, including the three stockholders' committees, agreed to an order allowing the foreclosure bill to be filed and the receivers to be joined as parties defendant. On January 4 and 12, 1937, appearance for the "Majority" and "Minority" Committees were withdrawn due to the fact that the committees had dissolved. On January 12, 1937, the Comstedt Committee intervened, and answers to the foreclosure bill were filed by the Comstedt and Danley Committees. When the motion to consolidate was filed, a rule was granted and notice was given to the Comstedt and Danley committees. On March 16, 1936, the court ordered the cases consolidated, all parties in interest having agreed thereto. After the court had dismissed the answers to the foreclosure bill and had directed to be submitted a decree of foreclosure and sale of all the assets as an entirety, notice of the submission of the proposed decree and a copy of the proposed decree were served on all parties in interest, including the Comstedt and Danley committees. Neither of these committees nor any other party in interest excepted to the proposed foreclosure decree, and the decree was made on April 13, 1937. After almost four weeks' advertisement of the sale, the Comstedt Committee, on May 7, 1937, presented a petition to modify the foreclosure decree. On May 11, 1937, the day prior to the advertised sale, a new committee known as the Battenfield Committee intervened and excepted to the foreclosure decree. The foreclosure sale was postponed until May 27, 1937, in order adequately to consider the exceptions. Notice of postponement was given to all parties in interest and duly advertised. The exceptions to the foreclosure decree were dismissed on May 26, 1937, and all parties in interest were notified thereof prior to the sale. After notice to all parties in interest, the sale was confirmed nisi on June 3, 1937. On June 14, 1937, a new committee known as the Kennedy Committee presented the objections now before the court. It clearly appears, therefore, that the stockholders' committees had notice of each step in the proceeding.

The first three exceptions of the Kennedy Committee are substantially the same as the fourth exception of the Comstedt Committee and are covered by the above discussion of the fourth exception of the Comstedt Committee.

■ The fifth exception of the Comstedt Committee and the tenth exception of the Kennedy Committee are to the effect that prior to the sale, the purchaser, Bethlehem Steel Company, purchased a large majority of the outstanding bonds and stocks at a price less than par, and accounts payable at prices between 43 cents and 60 cents on the dollar, which will operate to the great advantage of Bethlehem Steel Company and to the disadvantage of stockholders. These exceptions are immaterial to the question whether the sale should be confirmed. The fact that the property was purchased by a creditor holding a large part of the outstanding indebtedness does not constitute a ground for objection to the sale. If the property had been sold to a purchaser who did not hold any indebtedness, the result would not be more advantageous to the stockholders. In the opinion of March 25, 1937, similar averments were stricken from the answers to the foreclosure bill on the ground that

they were immaterial to the question whether a foreclosure sale should be ordered.

The fourth exception of the Kennedy Committee is that the terms of sale were harsh and tended to chill bidding. Nothing is stated in the exception to show what terms were harsh or tended to chill bidding. The same exception was urged by the Comstedt Committee on exceptions to the foreclosure decree, and the court, in its opinion of May 26, 1937, dismissed the exceptions, stating: "The petitioner fails to state wherein the method and manner of sale and the qualifications of bidders, fixed by the decree, are improper. The court is of the opinion that the method and manner of sale afford ample ·opportunity for any bidder to bid for the property, and that the requirement that the bidder deposit 10 per cent. of the amount of the proposed bid as a pledge that the bid will be made good, is reasonable. The fact that after due notice, no objections to the decree were made by the parties in interest prior to the entry of the decree supports this view."

The sixth exception of the Kennedy Committee is that the court erred in not requiring holders of bonds to prove their claims before the master since the bonds were not known to be registered bonds. This exception has no bearing on whether the decree of sale should be confirmed. In paragraph 21 of article 11 of the decree of sale, the court found the amount due for principal and interest of bonds. This finding was based on allegations in the bill of complaint admitted by the answers thereto. Accordingly, it was not necessary to require bondholders to file proofs of claim. When distribution of the proceeds of the sale takes place, the court can require the surrender of bonds for cancellation.

The seventh exception of the Kennedy Committee is that the court erred in the requirement, published on April 16, 1937, that written proofs of claim be filed on or before April 30, 1937, in that some claimants lived in Nebraska and Texas and had not sufficient time to file claims. This exception is also irrelevant to the confirmation of the sale. It does not appear that the Kennedy Committee represents these claimants. If any creditor had insufficient time to· prove a claim, leave to file nunc pro tunc can be given upon proper application.

The eighth and ninth exceptions of the Kennedy Committee are that neither counsel nor petitioners were informed of the opinion of May 26, 1937, until June 8, 1937; that on May 25, or 26, John E. Cupp, attorney for the Comstedt Committee, informed some of the petitioners and counsel that the foreclosure sale would be postponed for 60 days, by reason of which petitioners and counsel were not present at the sale and were precluded from bidding. Counsel does not complain that he had no notice of the date of the postponed sale nor that he was misinformed by any proper authority responsible in the cause. The Kennedy Committee did not come before the court until after the sale, and appearance of Counsel Karl Donecker was not entered until June 21, 1937. However, Donecker was one of counsel for the Battenfield Committee, the local counsel being Mortimer C. Rhone. Neither of counsel entered a formal appearance. The local counsel of the ·Battenfield Committee was notified of the opinion of May 26, 1937 before the sale took place and a copy of the opinion was mailed to him. Counsel for the Battenfield Committee as well as the committee itself had the same notice of the date of the postponed sale as every other party in interest. Postponement was announced at the place of sale in accordance with the foreclosure decree; copies of the order of postponement were mailed to each party to the cause; and notice of postponement was published in the Philadelphia Inquirer, Philadelphia Record, Baltimore Sun, Lewisburg Saturday News, Lewisburg Journal, and the Williamsport Sun. Any mistake as to date of sale did not prejudice the Kennedy Committee in any way, since counsel stated in open court at the hearing on these exceptions that his clients were not then prepared to bid nor in a position to guarantee that they or anyone else would bid more than $3,300,-000 if a resale were ordered. The eighth and ninth exceptions, therefore, do not constitute any valid objection to the confirmation of the sale.

The remaining exceptions of the Kennedy Committee are that the sale price of $3,300,000 was grossly inadequate, was the only price bid, and was not the result of free bidding; that the balance sheets and income statements of the receivers show a valuable equity in the stockholders which will be destroyed if the sale is con-

firmed; and that under all the law, the court has discretionary power to set aside the sale, and in view of all the equities involved, the court would be exercising wise judgment if the sale were set aside.

The sale price of $3,300,000 is sufficient to pay in full the mortgage and other indebtedness, together with interest. In addition to the sale price, the purchaser is obliged to pay approximately $91,000 in liabilities of the receivers as well as all costs, expenses, and allowances. The exceptants have not introduced any evidence to show that the sale price is inadequate or to show what the fair price should be; they have made no offer to purchase or give assurance that they or anyone else would make any offer or a better offer if a resale were ordered. Painter v. Union Trust Co. et al. (C.C.A.) 246 F. 240. Bondholders and stockholders committees, as well as other interested parties, have endeavored for over 4½ years to obtain a purchaser or effect a reorganization, but no one except the successful bidder at the sale made an offer. The best evidence of value is what property brings at a public sale after full notice. The sale of the assets of the Williamsport Wire Rope Company was duly advertised for four weeks in newspapers of wide circulation and was conducted fairly.

The amount of the purchase price, sufficient to pay in full the mortgage and indebtedness with interest, does not raise a presumption of fraud or unfairness. "The rule is well settled that 'a judicial sale regularly made in the manner prescribed by law, upon due notice, and without fraud, unfairness, surprise or mistake, will not generally be set aside or refused confirmation on account of mere inadequacy of price, however great, unless the inadequacy is so gross as to shock the conscience and raise a presumption of fraud, unfairness, or mistake.'" Speers Sand & Clay Works v. American Trust Co. (C.C.A.) 52 F.(2d) 831, 835. See, also, Ballentyne v. Smith, 205 U.S. 285, 27 S.Ct. 527, 51 L.Ed. 803; Jackson v. Fuller, 56 App.D.C. 239, 85 F. (2d) 816; Warner Bros. Pictures v. Lawton-Byrne-Bruner Ins. Co. (C.C.A.) 79 F. (2d) 804; Bovay v. Townsend (C.C.A.) 78 F.(2d) 343, 105 A.L.R. 359; Bethlehem Steel Co. v. International Combustion Engineering Corp. (C.C.A.) 66 F.(2d) 409.

The court does not feel warranted in ordering a resale at a great additional expense, since it does not appear that a resale will bring a higher price. The exceptants suggest that if the court fix an upset price, the stockholders will be adequately protected. This is the first time after the sale has been made and confirmed nisi, that an upset price has been suggested, although the stockholders' committees had notice of every step in the proceeding. The exceptants do not attempt to show what the upset price should be nor that the property could be sold at an upset price larger than $3,300,000.

The exceptants suggested at the oral argument and in their brief that since no ancillary proceeding was instituted in Maryland, where the Sparrows Point plant of the Williamsport Wire Rope Company is located, the court had no jurisdiction to sell that property. There is no written exception on the record raising this question and the matter is not before the court. However, in view of the fact that the receivers of the Williamsport Wire Rope Company acquired title in their own name to the Sparrows Point plant pursuant to the order of this court, and in view of the provisions of 28 U.S.C. § 847 (28 U.S.C.A. § 847), the Sparrows Point plant was properly included in the order of sale.

A decree finally confirming the sale of the property of Williamsport Wire Rope Company to Bethlehem Steel Company, and dismissing the exceptions of the Comstedt and Kennedy Committees, has been made.