**MAGNOLIA SPRINGS APARTMENTS, INC., Appellant,**
v.
**UNITED STATES of America,**
Appellee.

No. 19816.

United States Court of Appeals
Fifth Circuit.

Oct. 25, 1963.

Joseph M. Williamson, Urbana, Ill., John A. Rush, Jacksonville, Fla., for appellant.

Edith House, Asst. U. S. Atty., Miami, Fla., Morton Hollander and John C. Eldridge, Attys., Dept of Justice, Washington, D. C., John W. Douglas, Acting Asst. Atty. Gen., Edward F. Boardman, U. S. Atty., Sherman L. Cohn, Atty, Dept. of Justice, Washington, D. C., for appellee.

Before RIVES, CAMERON and HAYS,* Circuit Judges.

CAMERON, Circuit Judge.

This is an appeal from a judgment of the district court confirming the foreclosure sale of certain real property to the mortgagee, the United States. Appellant attacks the adequacy of the sales price, and claims that the market for the property was destroyed by improper conduct of the mortgagee prior to the sale.

The proceeding was brought by the United States to foreclose its mortgage on appellant's "Wherry" Housing Project.[1] Appellant admitted the notes, the mortgage and the default. The government's motion for summary judgment of foreclosure was granted, and the property was sold for one million dollars to the sole bidder, the government. Appellant filed objections to the sale; and at the hearing thereon, the following facts were stipulated:[2]

The project was constructed in 1952–1953 at a cost of $2,877,666.00. Based on a capitalization of income that could be received from the project's "maximum potential gross rent" (100% occupancy), its value at the time of the sale was $2,889,567.00.[3] Rental rates at the project were below those prevailing in the area.

---

* Of the Second Circuit, sitting by designation.

1. See 12 U.S.C.A. § 1748, and see generally United States v. Tampa Bay Garden Apartments, Inc., 5 Cir., 1961, 294 F.2d 598; United States v. Leavell and Ponder, Inc., 5 Cir., 1961, 286 F.2d 398; and United States v. Benning Housing Corporation, 5 Cir., 1960, 276 F.2d 248.

2. The parties and the court agreed that appellant's offer of proof of the facts stated should "stand in lieu of the proof itself." The trial court further told appellant, "I am considering everything proved, as you offered."

3. At and about the time of the hearing, however, less than half the units in the project were occupied. In an earlier hearing on the government's motion for summary judgment of foreclosure, the majority stockholder of the appellant corporation estimated the value of the project at $2,897,000.00. However, this estimate was based on his sale of a "similar" project which was one hundred per cent occupied when sold. That sale, moreover, was not a distress sale by a defaulting mortgagor, and was just outside the main gate of an active military installation. The project in the present case was adjacent to an installation that was being abandoned.

The evidence and stipulations indicate that appellant had invoked the aid of congressmen and senators to persuade the Navy Department to acquire the project, and that the Navy had decided to "initiate the necessary procedures to acquire" the project. This intention was revealed in a news release published in a Jacksonville, Florida newspaper. An effort was made by appellant's president to sell the property privately, but potential buyers lost interest when they learned of the Navy's announced intent to acquire the property. The Navy subsequently determined, however, that the value of the property was less than the mortgage debt. According to appellant, the Navy therefore decided that "they would proceed to procure the property under foreclosure rather than the ordinary step—eminent domain."

The government's sole witness, a F.H.A. real property officer in Jacksonville, testified that he entered the sole bid at the foreclosure sale. He explained that the bid price of one million dollars was his estimate of value, as based on capitalization of income in the light of the current occupancy rate of less than fifty per cent. The maximum bid price authorized by the national office of the F.H.A. was $1,900,000. The officer testified that he had not consulted anyone in the Navy Department with regard to foreclosure, but that he had been informed that the Navy did not intend to acquire the project. The district court confirmed the sale, without prejudice to appellant's renewal of its arguments if and when the government should apply for a deficiency decree.

Appellant contended that the purchase price was wholly inadequate and that the inadequacy resulted from the Government's artificial destruction of the market by its premature announcement of its intention to condemn the project. It urged that the "clean hands" doctrine [4] precludes confirmation of a sale at a price artificially depressed by the unconscionable conduct of the buyer itself. Under these circumstances, it urged, the purchase amounted to an "unconscionable taking" without due process of law.

The government countered with the contention that a public sale pursuant to court order is not to be set aside "for mere inadequacy of price, unless that inadequacy be so gross as to shock the conscience." Ballentyne v. Smith, 1907, 205 U.S. 285, 290, 27 S.Ct. 527, 528, 51 L.Ed. 803,[5] and that no such inadequacy has been demonstrated here. It pointed out that this question is addressed to the discretion of the district court.[6]

■ With respect to appellant's claim of government misconduct in announcing the Navy's intent to acquire the property, the government pointed out that it was appellant who brought about the Navy's action. It denied, moreover, any impropriety in the government's actions. The Navy did not announce that it intended to condemn the property; it merely stated that it would initiate steps directed towards acquiring the project. Even if this were read as stating an intention to

4. Deseret Apartments, Inc. v. United States, 10 Cir., 1957, 250 F.2d 457; Lacy v. United States ex rel. and for Use of Tenn. Valley Authority, 5 Cir., 1954, 216 F.2d 223.

5. See also Gelfert v. National City Bank, 1941, 313 U.S. 221, 232, 61 S.Ct. 898, 85 L.Ed. 1299; Speers Sand & Clay Works v. American Trust Co., 4 Cir., 1931, 52 F.2d 831, 835; Bovay v. Townsend, 8 Cir., 1935, 78 F.2d 343, 345, 105 A.L.R. 359; Jackson v. Fuller, 1936, 66 App. D.C. 239, 85 F.2d 816, 818–819; In re Jewett & Sower Oil Co., 7 Cir., 1936, 86 F.2d 497, 498; In re Stanley Engineering Corporation, 3 Cir., 1947, 164 F.2d 316, 318–319, certiorari denied Root v. Gallman, 332 U.S. 847, 68 S.Ct. 351, 92 L. Ed. 417; Breeding Motor Freight Lines v. Reconstruction Finance Corp., 10 Cir., 1949, 172 F.2d 416, 424; Schroeder v. Annapolis & Chesapeake Bay Power Co., D.C.Md., 1933, 2 F.Supp. 394, 397; Guaranty Trust Co. v. Williamsport Wire Rope Co., D.C.Pa., 1937, 20 F.Supp. 634, 640.

6. See, e.g., Breeding Motor Freight Lines v. Reconstruction Finance Corp., supra. 172 F.2d at pages 421–422; Bovay v. Townsend, supra 78 F.2d at page 345.

condemn, the government was not bound to carry out its stated plan,[7] and the government incurs no liability for damages by reason of its abandonment of the plan.[8]

The only evidence of the value of the property, based upon the rate of occupancy at the time of the sale, was a one million dollar figure estimated by the F.H.A. officer. While the $1,900,000.00 authorized by the national office of the F.H.A. could not have exceeded its estimate of fair market value, we do not know how much information about the project was available to the national office.

■ Appellant's figures were grossly optimistic, as they were based on one hundred per cent occupancy. There appeared to be little likelihood that this figure would be reached in the foreseeable future, since the Navy installation for the service of which the project was built had been abandoned. Perhaps the sale price was low. But under the circumstances it can hardly be said that the price was so inadequate as to shock the conscience, or that the district court abused its discretion in confirming the award.[9]

■ The argument that the government's conduct artificially depressed the price for its own benefit must fail for want of proof. Contrary to counsel's assertions, it does not appear in the record that the Navy ever announced that it would condemn the property. It merely said it would take steps to acquire the property. The distinction is critical, since the threat of condemnation might scare off potential buyers, but there is no reason why the government's presence as a bidder at auction should have that effect.

Even if the announcement was understood by potential buyers as meaning that the Navy was planning to condemn, the Navy was under no obligation to carry out its announced intent.[10] If it was shown that the Navy's purpose in making its announcement was to depress the price at foreclosure sale, the sale might properly be set aside because of "unfairness." [11] But there is no evidence to support this suggestion. Rather, it appears that the Navy originally intended to acquire the property because of political pressure brought to bear by appellant, but that it subsequently lost interest in the project.

Appellant argued that there should have been a hearing on all of this; and there was.

Affirmed.

7. Danforth v. United States, 1939, 308 U.S. 271, 284, 60 S.Ct. 231, 84 L.Ed. 240.

8. Moody v. Wickard, D.C.Cir., 1943, 78 U. S.App.D.C. 80, 136 F.2d 801.

9. Cf. Jackson v. Fuller, supra, and Bovay v. Townsend, supra.

10. Danforth v. United States, supra.

11. Ballentyne v. Smith, supra.