**UNITED STATES of America, Plaintiff,**

v.

**Gladwin C. LAMB, Anna E. Lamb, Clarence T. Freed, Teddy Hand, North Star Cont., Brookside Cont. Tranquil Cont., Warren Johnson, and The State of Kansas, Defendants.**

No. 89–1533–SAC.

United States District Court,
D. Kansas.

June 2, 1995.

As Corrected June 8, 1995.

Kathy M. Davis, Kansas Dept. of Revenue, Topeka, KS, Gigi M. Fowler, Roger W. Bracken, U.S. Dept. of Justice Office of Sp. Litigation–Tax Div., Washington, DC, Annette B. Gurney, Office of U.S. Atty., Wichita, KS, for U.S.

Gladwin C. Lamb, Wichita, KS, pro se.

Anna E. Lamb, Wichita, KS, pro se.

Ted E. Knopp, Ted E. Knopp, Chartered, Wichita, KS, for Gladwin C. Lamb and Anna E. Lamb.

James R. Howell, Larry Wall & Associates, Wichita, KS, for Teddy Hand.

Teddy Hand, Goddard, KS, pro se.

D. Philip Wilkes, Topeka, KS, for State of Kansas.

## MEMORANDUM AND ORDER

CROW, District Judge.

The United States of America commenced this action to reduce to judgment certain outstanding federal tax assessments against Gladwin C. Lamb and Anna E. Lamb, to set aside fraudulent conveyances of certain properties and to foreclose federal tax liens on certain properties. An amended complaint was subsequently filed, but the Lambs failed to timely file an answer to either the original or amended complaint. On August 14, 1990,

this court entered a memorandum and order denying the Lambs' motion to dismiss. *See United States v. Lamb,* No. 89–1533–C, 1990 WL 129451, 1990 U.S.Dist. LEXIS 10925 (D.Kan. Aug. 14, 1990). On March 18, 1991, default judgment was entered against Gladwin C. Lamb in the amount of $680,711.96 plus interest; default judgment was also entered against Anna E. Lamb in the amount of $13,451.09 plus interest.[1] *See United States v. Lamb,* No. 89–1533–C, 1991 U.S.Dist. LEXIS 3856 (D.Kan. March 18, 1991).

On May 3, 1991, this court denied the Lambs' motion to set aside the default judgment entered on March 18, 1991. *See United States v. Lamb,* No. 89–1533–C, 1991 WL 105233, 1991 U.S.Dist. LEXIS 6857 (D.Kan. May 3, 1991). On January 7, 1992, this court denied the Lambs' motion for relief pursuant to Fed.R.Civ.P. 60(b). *See United States v. Lamb,* No. 89–1533–C, 1991 U.S.Dist. LEXIS 3856 (D.Kan. March 18, 1991).

On October 19, 1993, upon the United States' motion, the court entered an order of sale foreclosing tax liens on certain property owned by the Lambs. The court also ordered the Marshal for the district of Kansas to advertise and sell, according to law, those properties.[2] *See* (Dk. 61). On December 1, 1993, after notice was published, a public sale of the properties located in Sedgwick County, Kansas, was conducted by the Marshal.

Although other persons apparently attended the sale and offered bids, two primary contenders ultimately vied for the properties in a contest of bids: Anna Lamb and Revenue Officer Carol June, an employee in the Wichita District of the Internal Revenue Service. On that day, Revenue Officer June emerged victorious, successfully outbidding Anna Lamb for each of the properties.

Revenue Officer June's victory was pyrrhic for two independent reasons. First, each of Revenue Officer June's bids was in an amount decidedly in excess of the appraised values of each of the properties. Revenue Officer June bid $100,000 in the form tax liens for the property located at 931 Nims Avenue, Wichita, Kansas, which had an appraised value of $54,000. Revenue Officer June bid $140,000 for the property located at 206 South Brookside, Wichita, Kansas, which had an appraised value of $83,000. Second, although Revenue Officer June believed that she was acting as an agent of the United States as she made bids for the properties, she was not authorized to make bids on behalf of the United States.

This case comes before the court upon the following motions filed by Anna Lamb:

1. Motion for an order confirming Marshal's sale of Sedgwick County properties (Dk. 82).

2. Renewed motion for confirmation of sale (Dk. 95).

3. Motion for orders to show cause and to assess deficiency upon resale against plaintiff United States of America (Dk. 98).[3]

Anna Lamb essentially seeks an order confirming the Marshal's sale of each the two properties. Anna Lamb also seeks a distribution of her portion of the net proceeds from the sale of the properties.

The government responds, opposing Lamb's motions.[4] The government asks the court, in the exercise of its equitable powers,

---

1. On April 12, 1994, a satisfaction of judgement was entered by the United States, indicating that Anna E. Lamb had paid the amount owed. *See* (Dk. 73).

2. On December 2, 1993, other properties owned by the Lambs in Woodson County, Kansas, were sold at a public auction conducted by the Marshal. Those sales were confirmed by the court on May 10, 1994. *See* (Dk. 78).

 To the extent that the United States' responses to Lamb's motions can be construed as requests for relief from the sale of the Woodson County, Kansas, properties, those requests are denied.

3. In this motion, Lamb argues, *inter alia,* that this court lacks subject matter jurisdiction to resolve this dispute. On August 14, 1990, this court held that the United States' "complaint facially establishes the necessary jurisdiction." Nothing argued or presented by Lamb undermines that conclusion or otherwise demonstrates that this court lacks subject matter jurisdiction.

4. The United States' brief opposing Lamb's motion to confirm sale of the Sedgwick County properties includes a motion for an order vacating the December 1, 1993, sale and a motion for a second order of sale of Sedgwick County properties. *See* (Dk. 93).

to vacate the sale of the Sedgwick County properties and order another Marshal's sale of the properties.

## Analysis

The court, having considered the numerous briefs filed by each of the parties, vacates the sale of the Sedgwick County properties and orders a second Marshal's sale of the properties. Although the court has considered all of the arguments advanced by the defendant, the court will only address the primary arguments urged by Lamb.

Lamb argues that the government's response to her motion to confirm the sale was untimely by at least one day and that the court should grant her motion as uncontested. The court finds that the government has responded to her motion within the time set by the court.

Lamb contends that the court's failure to confirm this sale will undermine the integrity of all judicial sales. Public confidence in the integrity of judicial sales is undoubtedly important, and concern about the importance of that process has long been recognized by the courts. For example, in *Scott v. Jones,* 118 F.2d 30, 32 (10th Cir.1941), the Tenth Circuit stated that a judicial sale should not be disturbed by an appellate court in the absence of substantial prejudice or error, as "[i]t is important that the confidence in the stability of judicial sales be not destroyed." *See Ballentyne v. Smith,* 205 U.S. 285, 291, 27 S.Ct. 527, 529, 51 L.Ed. 803 (1907) (Supreme Court "disinclined to any action which will impair confidence in the stability of judicial sales . . .").

> Auctions should not be empty exercises. The public policy of inspiring confidence in court-ordered sales favors confirmation of the sale to the highest bidder at the auction if it is fairly conducted. The court must also consider, however, the purpose of the judicial sale, which is to benefit both creditors and debtors.

*First Nat. Bank v. M/V Lightning Power,* 776 F.2d 1258, 1261 (5th Cir.1985).

Nevertheless, "the rule in federal courts is well settled that the matter of confirming a judicial sale rests in the sound judicial discretion of the trial court and this discretion will not be disturbed on appeal except in cases of its abuse." *United States v. Heasley,* 283 F.2d 422, 426 (8th Cir.1960); *see Bovay v. Townsend,* 78 F.2d 343, 345 (8th Cir.1935) ("The rule in federal courts is quite well settled, however, that the matter of confirming a public judicial sale rests in the sound judicial discretion of the trial court and that appellate courts will not disturb that discretion, except in cases of its abuse."); *see also United States v. Petty Motor Co.,* 767 F.2d 712 (10th Cir.1985) (federal law governs procedure of judicial sales in federal court), *cert. denied,* 475 U.S. 1056, 106 S.Ct. 1284, 89 L.Ed.2d 591 (1986). "[E]ach case must stand upon its own peculiar facts." *Ballentyne,* 205 U.S. at 290, 27 S.Ct. at 529.

Although this case does not precisely fit the typical fact pattern in which courts have declined to confirm the Marshal's sale,[5] the court is convinced that the better exercise of discretion in this case is to vacate the December 1, 1993, sales of the Sedgwick County properties and to order a second sale. It is well settled that the government cannot be bound by the unauthorized acts of its agents. *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *United States v. Vanhorn,* 20 F.3d 104, 112 n. 19 (4th Cir.1994) ("The Government is simply not bound by the negligent, unauthorized acts of its agents."). The "'government could scarcely function if it were bound by its employees' unauthorized representations.'" *Kennedy v. United States,* 965 F.2d 413, 420 (7th Cir.1992) (*quoting Gressley v. Califano,* 609 F.2d 1265, 1267 (7th Cir.1979)). The United States' contention that Revenue Officer June was not an

---

5. Cases in which the district court has refused to confirm the sale more commonly involve a scenario where the price bid for the property is too low:

> "[A] sale will not be set aside for mere inadequacy of price unless that inadequacy of price be so gross as to shock the conscience, or

unless there be additional circumstances against its fairness."

*Ballentyne,* 205 U.S. at 290, 27 S.Ct. at 528. In *Ballentyne,* the Supreme Court affirmed the lower court's refusal to confirm a judicial sale based upon inadequacy of the bid.

authorized agent is largely unassailed. Consequently, there is essentially no evidence demonstrating that the United States can be legally bound to Revenue Officer June's bid.

 Nor has Lamb demonstrated that the government should be estopped from denying that Revenue Officer June's bid was not authorized. In general, attempts to estop the government have been unsuccessful. While the Supreme Court has rejected the government's request for an across-the-board no-estoppel rule, *OPM v. Richmond,* 496 U.S. 414, 426, 110 S.Ct. 2465, 2472–73, 110 L.Ed.2d 387 (1990),[6] it is well settled that the government may not be estopped on the same terms as any other litigant. *Heckler v. Community Health Services,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). It is also clear that erroneous oral statements or mere negligent conduct by a government agent are insufficient to apply estoppel. *See, e.g., OPM,* 496 U.S. 414, 110 S.Ct. at 2466 (erroneous advice given by government employee to a benefit claimant cannot estop the government from denying benefits not otherwise permitted by law).[7] Recently, the Tenth Circuit stated:

> "Courts generally disfavor the application of the estoppel doctrine against the government and invoke it only when it does not frustrate the purpose of the statutes expressing the will of Congress or unduly undermine the enforcement of the public laws." *FDIC v. Hulsey,* 22 F.3d 1472, 1489 (10th Cir.1994). Thus, "equitable estoppel against the government is an extraordinary remedy." *Board of County Comm'rs v. Isaac,* 18 F.3d 1492, 1498 (10th Cir.1994). "It is far from clear that the Supreme Court would ever allow an estoppel defense against the government under any set of circumstances. However, even assuming estoppel could be applicable, the Court has indicated that there must be a

showing of affirmative misconduct on the part of the government." *Hulsey,* 22 F.3d at 1490 (citation omitted). "Affirmative misconduct is a high hurdle for the asserting party to overcome." *Id.* "Affirmative misconduct means an affirmative act of misrepresentation or concealment of a material fact. Mere negligence, delay, inaction, or failure to follow agency guidelines does not constitute affirmative misconduct." *Isaac,* 18 F.3d at 1499 (citation omitted).

*In re DePaolo,* 45 F.3d 373, 376–377 (10th Cir.1995). Assuming, *arguendo,* that the United States may be estopped under some circumstances, Lamb has failed to demonstrate that estoppel is warranted in the case at bar.

Although the government's conduct in this case should not be viewed as a paradigm for the future, there is insufficient evidence to demonstrate that the government's conduct was of such a nature to warrant estoppel. Moreover, the government states that "[i]n the event that the Court sets aside the sales of the Sedgwick County properties, the United States will bear the costs of the vacated sales from its portion of the proceeds of the subsequent sales." Dk. 93 at 15. As a condition of vacating the December 1, 1993, sales, the government must pay the costs of the vacated sales as it has agreed to in its written pleadings to the court.

As a final argument, Lamb contends that under the principles of agency law, if Revenue Officer June was not an authorized government agent at the sale, then she was bidding for herself. *See Restatement (Second) of Agency* § 329 (1958). The United States responds, arguing that the court in its equitable discretion should set aside the sale under the circumstances of this case. The United States also argues that because Revenue Officer June did not comply with the

---

6. In *OPM,* the court left "for another day whether an estoppel claim could ever succeed against the Government." 496 U.S. at 423, 110 S.Ct. at 2470.

7. In *OPM,* the court collects and discusses the history of cases in which parties have attempted to assert estoppel against the government. Although the plaintiff's reliance on erroneous statements or advice of a government employee ended in some unfortunate or harsh result for the plaintiff, the Supreme Court has consistently denied estoppel against the government. *See Merrill,* 332 U.S. 380, 68 S.Ct. 1 (government not estopped from denying insurance coverage even though its agent told farmer that his entire wheat crop qualified for insurance when it in fact was not.)

express conditions of the sale, *i.e.*, post a $10,000 cash deposit and consummate the purchases within five business days, the sale was not completed and a second sale should be ordered pursuant to the terms of the Marshal's Notice of Sale.

Based upon the specific facts and circumstances of this case, the court sets aside the December 1, 1993, sale and orders a second sale. Because she believed that she was an authorized agent acting on behalf of the government, Revenue Officer June bid tax liens rather than cash. Revenue Officer June made no cash deposits, nor did she or does she intend to make such a deposit or pay the amounts bid. In pertinent part, the express terms of the notice of sale provide:

No bid (except for bids made by the United States) shall be accepted unless the bid is accompanied by a cash deposit, in the form of a certified check, cashier's check or cash, in the amount of $10,000. The successful bidder making a cash deposit shall tender the balance of the purchase price by certified or cashier's check to the United States Marshal for the District of Kansas within five days (exclusive of Saturday, Sunday and federal holidays) from the date of auction. In the event the successful bidder defaults in any of the payment terms contained herein, the cash deposit shall be forfeited and retained by the United States Marshal and the real property shall be again offered for sale in the same manner as set forth herein.

Revenue Officer June did not and can not fulfill the bid that was made. By the express terms of the notice, she would be required to forfeit her deposit. No deposit was made and therefore it cannot be forfeited. Nor by the terms of the notice of sale is Revenue Officer June required to specifically consummate the purchase. In accordance with the Notice of Marshal's Sale, and in the exercise of its discretion, the court will offer the properties again for sale at a public auction.

### Distribution of Proceeds from Second Sale

The parties initially disputed the percentage of net proceeds that Anna Lamb would receive as a result of the sale of the property located at 931 Nims, Wichita, Kansas, which apparently was the Lambs' homestead. The parties apparently now agree that Anna Lamb is entitled to 51.007% of the net proceeds of that sale. The United States is instructed to prepare a proposed second order of sale which reflects this percentage. As indicated above, the United States agrees to bear the costs of the vacated sales from its portion of the proceeds of the second sale, and the proposed order of sale should reflect that fact.

IT IS THEREFORE ORDERED that Lamb's "Motion for an order confirming Marshal's sale of Sedgwick County properties" (Dk. 82), Lamb's "Renewed motion for confirmation of sale" (Dk. 95), and Lamb's "Motion for orders to show cause and to assess deficiency upon resale against plaintiff United States of America" (Dk. 98) are denied.

IT IS FURTHER ORDERED that the United States' motion for an order vacating the December 1, 1993, sale of the Sedgwick County properties and motion for a second order of sale of Sedgwick County properties, contained in document 93 (Dk. 93), are granted on the conditions set forth in the body of this memorandum and order.

IT IS FURTHER ORDERED that the United States shall provide the court with a proposed "Second Order of Sale" prepared in accordance with the instructions set forth in the body of this memorandum and order.