BREEDING MOTOR FREIGHT LINES, Inc. v. RECONSTRUCTION FINANCE CORPORATION et al.

BREEDING MOTOR COACHES, Inc. v. RECONSTRUCTION FINANCE CORPORATION et al.

BREEDING et al. v. RECONSTRUCTION FINANCE CORPORATION
(two cases).

RECONSTRUCTION FINANCE CORPORATION v. BREEDING et al.

Nos. 3546, 3547, 3596, 3778, 3779.

United States Court of Appeals
Tenth Circuit.

Feb. 7, 1949.

J. B. Dudley and Paul Dudley, both of Oklahoma City, Okl. (J. B. Dudley, Jr. and Dudley, Duvall & Dudley, all of Oklahoma City, Okl., and R. M. Mountcastle, of Muskogee, Okl., on the brief), for Breeding and others.

Lynn Adams, of Oklahoma City, Okl., for Reconstruction Finance Corporation and others.

. Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

These five appeals are from judgments, orders, and actions of the United States Court for Eastern Oklahoma. Reference to some of the facts and to some of the procedural steps will be omitted, but an extended statement seems necessary to an understanding of the questions presented for determination. Glenn E. Breeding and Irene Breeding, residents of Muskogee, Oklahoma, sometimes hereinafter referred to as the Breedings, were engaged as copartners in the operation of a bus line known as Breeding Coaches. In 1944, they acquired the Lyman Truck Lines from Opal Bowlin Lyman and Lucille Lyman Porter. The purchase included freight operating rights from Kansas City, Missouri, to Dallas, Texas, from Oklahoma City, Oklahoma, to Fort Smith, Arkansas, and between certain supplemental points, rolling equipment, a terminal at Muskogee, and a tract of land near Pryor, Oklahoma. A note in the sum of $107,000, secured by chattel and real estate mortgages on the property, was given for part of the purchase price. In 1945, the Breedings acquired certain properties from Tri-State Motor Transport, Inc., a corporation organized under the laws of Missouri. The properties consisted of freight operating rights extending generally from St. Louis, Missouri, to Oklahoma City, Oklahoma, from Joplin, Missouri, to Kansas City, Missouri, and between supplemental points, rolling equipment, a real estate terminal at St. Louis, and a real estate terminal at Joplin. A note for $120,000, secured by chattel and real estate mortgages covering the property, was given for part of the purchase price.

In June, 1945, the Breedings filed with the Reconstruction Finance Corporation an application that it participate with The Liberty National Bank of Oklahoma City, hereinafter referred to as the bank, in a loan of $600,000 to be made to the Breedings. The application was amended by reducing the amount of the loan to $560,000. The Reconstruction Finance Corporation agreed to purchase a deferred participation of $380,000 in the loan. On November 9, 1945, the Breedings executed and delivered to the bank their promissory note in the amount of $560,000, payable in monthly installments of $9,334 on the principal, commencing one month from the date thereof, the balance payable on or before five years from the date thereof, and the interest payable monthly as it accrued concurrently with the payments on

the principal. The note provided among other things that the payee was authorized to declare all or any part of the indebtedness immediately due and payable in the event of failure to pay any part of the indebtedness when due or in the event of nonperformance of conditions imposed by the payee or the Reconstruction Finance Corporation with respect to the indebtedness. The Breedings also executed deeds of trust, real estate mortgages and a chattel mortgage securing payment of the note. By these instruments, the bank was given a first mortgage lien on the property of the coach business, and a second mortgage lien upon the property of the freight business, junior to the mortgages previously given, respectively, to Opal Bowlin Lyman and Lucille Lyman Porter and to Tri-State Motor Transport, Inc. The bank disbursed to the Breedings or for their benefit approximately $298,000, and it was used to pay outstanding notes, to pay certain withholding taxes for which a lien had been filed, to purchase equipment, and for operating capital. Pursuant to the terms and provisions of its agreement, the Reconstruction Finance Corporation purchased from the bank its participation in the note. The Breedings paid the first monthly installment due on the note, but the second installment was not paid. The bank endorsed, assigned, and transferred the note and mortgages to the Reconstruction Finance Corporation, and the entire amount of the unpaid indebtedness was declared due.

The Reconstruction Finance Corporation instituted against the Breedings an action to recover judgment on the note and foreclose the mortgages. By answer, the Breedings admitted nonpayment of the second installment due on the note, pleaded that failure to make such payment was not due to any fault on their part but on account of the failure of the Reconstruction Finance Corporation to comply with its commitments, and pleaded that by reason thereof the Reconstruction Finance Corporation did not have the right to declare the indebtedness due and to foreclose the mortgages securing it; and by counterclaim damages were sought for the failure to disburse to the Breedings

the full amount of the loan. Opal Bowlin Lyman and Ralph W. Porter, administrator of the estate of Lucille Lyman Porter, deceased, and Tri-State Motor Transport, Inc., became parties to the action, seeking judgment for the balance due upon the notes of $107,000 and $120,000, respectively, to which reference has been made, and to foreclose the mortgage liens securing such notes. When the cause came on for hearing, the Breedings dismissed with prejudice their counterclaim; and judgment was entered in favor of the Reconstruction Finance Corporation in the amount of $253,577.52, together with accrued interest and attorney's fees, in favor of Opal Bowlin Lyman and Ralph Lyman Porter, administrator of the estate of Lucille Lyman Porter, deceased, in the sum of $48,000, together with accrued interest and attorney's fees, and in favor of Tri-State Motor Transport, Inc., in the sum of $77,720.32, together with attorney's fees. The judgment decreed foreclosure of the mortgage liens, continued the Breedings in possession of the mortgaged property, provided that unless the Breedings should on or before sixty days from the date of the judgment pay the full amount of the judgment they should deliver possession of the mortgaged property to the special master thereafter to be appointed, provided that the master should sell the property at public auction, provided that the sale or sales should be subject to confirmation by the court, provided that the master should execute conveyances of the property sold, and provided that the proceeds should be disbursed in the manner therein specified. After entry of the judgment, the Breedings sought and obtained from the Reconstruction Finance Corporation the sum of $42,250 to be used in paying back wages, current wages, rent, insurance premiums, and utility bills, such as lights and telephone. A supplemental judgment was entered for that amount, together with interest thereon, with provision that it should have the same force, effect, lien, and priority as though included in the original judgment. Sometime after entry of the original judgment, the Breedings transferred to Breeding Motor Coaches, Inc., a corporation, and to Breeding Motor

Freight Lines, Inc., a corporation, certain of the properties described in the mortgages and in the judgment; and the two corporations subsequently became parties to the action.

More than a year after entry of the original judgment, a special master was appointed, and he was directed to take possession of the property and cause it to be sold as provided in the judgment. An execution and order of sale was issued but it was returned unexecuted. An alias execution and order of sale issued and a notice of sale was published. The Breedings, Breeding Motor Coaches, Inc., and Breeding Motor Freight Lines, Inc., filed a motion to quash and withdraw the notice of sale and to direct the master to give and publish a new and corrected notice. The motion was denied. At the sale, the property was sold to the Reconstruction Finance Corporation for $145,000, and the sale was reported to the court for confirmation. The Breedings, Breeding Motor Coaches, Inc., and Breeding Motor Freight Lines, Inc., filed objections to the sale. The report of the sale and the objections were heard. Evidence was adduced, including a transcript of the proceedings at the sale; and the sale was confirmed.

Intermediate the entry of the original judgment in the foreclosure proceeding and the making of the sale of the mortgaged property, Breeding Motor Coaches, Inc., and Breeding Motor Freight Lines, Inc., each filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The Reconstruction Finance Corporation and Opal Bowlin Lyman and Ralph W. Porter, trustee of the trust estate of Ernest W. Lyman, attacked the proceedings for lack of good faith. The two proceedings were consolidated, and after hearing they were dismissed.

More than two years after entry of the judgment in the foreclosure proceeding, and more than nine months after confirmation of the sale made by the special master, the Breedings, Breeding Motor Coaches, Inc., and Breeding Motor Freight Lines, Inc., filed a motion to vacate the judgment on the ground that the original note, the deeds of trust, the real estate mortgages, and the chattel mortgages given to the bank were not authorized by the Interstate Commerce Commission, as required by 49 U.S.C.A. §§ 314, 20a. The Reconstruction Finance Corporation responded to the motion. After a hearing, the court concluded that the note and mortgages were securities within the meaning of the statutes referred to; that having failed to plead in advance of the entry of judgment the invalidity of the note and mortgages for want of such approval, the judgment could not be attacked on that ground; and that the motion was not filed within a reasonable time. The motion was denied.

Making reference to the cases without regard to the numerical order in which they appear on the docket of this court, the appeal in the first is by Breeding Motor Coaches, Inc., from the judgment dismissing its petition in the reorganization proceeding under the Bankruptcy Act; the appeal in the second is by Breeding Motor Freight Lines, Inc., from the judgment dismissing its petition in a like reorganization proceeding; the appeal in the third is by the Breedings, Breeding Motor Coaches, Inc., and Breeding Motor Freight Lines, Inc., from the order confirming the sale of the special master; the appeal in the fourth is by the Breedings, Breeding Motor Coaches, Inc., and Breeding Motor Freight Lines, Inc., from the order overruling and denying the motion to vacate the judgment, and the appeal in the fifth is by the Reconstruction Finance Corporation from the findings and conclusions of the court that the original note given to the bank was in an amount which required authorization by the Interstate Commerce Commission, and that the note and mortgages were securities within the meaning of 49 U.S.C.A. §§ 314, 20a.

The action of the court in dismissing the respective petitions of Breeding Motor Coaches, Inc., and Breeding Motor Freight Lines, Inc., for an arrangement under Chapter X of the Bankruptcy Act is challenged on the ground that each petition stated a cause of action for the relief therein sought; that the uncontroverted evidence sustained the essential elements of each cause of action; and that the court

erred in dismissing the proceedings for lack of good faith. Section 141 of the Bankruptcy Act, 11 U.S.C.A. § 541, provides that upon the filing of a petition by a debtor, the judge shall enter an order approving such petition, if satisfied that it complies with the requirements of the chapter and has been filed in good faith, or dismiss it if not so satisfied; section 144, 11 U.S.C.A. § 544, provides in substance that if a creditor, indenture trustee, or stockholder shall file an answer controverting any of the material allegations contained in the petition, the judge shall determine the issues presented, and enter an order approving the petition if satisfied that it complies with the requirements of the chapter, that it was filed in good faith, and that the material allegations are sustained by the proofs, or dismiss it if not so satisfied; and section 146, 11 U.S.C.A. § 546, provides in presently material part that without limiting the generality of the meaning of the term "good faith", a petition shall be deemed not filed in good faith if it is unreasonable to expect that a plan of reorganization can be effected. One of the primary Congressional purposes in the enactment of the Chandler Act of 1938 was to encourage resort to bankruptcy reorganization as a means of avoiding unnecessary or premature liquidation. Claridge Apartments Co. v. Commissioner, 323 U.S. 141, 149, 65 S.Ct. 172, 89 L.Ed. 139. But, despite the sincerity of motives of the debtor, the court is not required to retain on its docket a proceeding for reorganization which is merely a visionary or impractical scheme of resuscitation. Tennessee Publishing Company v. American National Bank, 299 U.S. 18, 57 S.Ct. 85, 81 L.Ed. 13. And when viewed realistically, if the court is not satisfied that the proceeding was filed in good faith, it should be dismissed. Fidelity Assurance Association v. Sims, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032.

■ Evidence was adduced at the hearing on the petitions, including an appraisal of the property owned by the two corporations. The appraisal was prepared by Glenn E. Breeding. It showed assets belonging to Breeding Motor Coaches, Inc., of the total value of $240,250, consisting of operating rights, rolling equipment, shop equipment, and office furniture and fixtures; and it showed assets belonging to Breeding Motor Freight Lines, Inc., of the aggregate value of $727,900, consisting of operating rights, rolling equipment, real estate terminals, shop and dock equipment, and furniture and fixtures. The value placed upon the operating rights constituted more than half of the total value of all assets. And the testimony of experts was offered relating to values. Much of that evidence concerned itself solely with the value of the operating franchises and the rolling equipment. And some of the testimony failed completely to indicate that any consideration was given to certain requisite elements of valuation, including past earnings or economic history of the unified operation. But that evidence did not stand alone. The plan contemplated the borrowing of $50,000 to $100,000 on receiver's certificates. Judgment had been entered in a foreclosure suit. Both before and after entry of the judgment, the business had been operated at a terrific loss. Current obligations had not been paid when due. Failure to pay employees had caused strikes. Due to labor trouble, the lines had not been in continuous operation. Money collected for cash-on-delivery shipments had not been remitted to shippers. Interline accounts had not been paid. The United States asserted a claim of more than $100,000 for unpaid taxes, and the State of Oklahoma asserted a like claim for more than $12,000. Some operating permits issued by the State of Oklahoma had been cancelled, and a petition had been filed with the Interstate Commerce Commision to cancel certain permits issued by it. Viewed in the light of all the facts and circumstances, considered in their totality, we are unable to say that the court erred in finding that the petitions were not filed in good faith and in dismissing the proceedings.

■ Error is assigned upon the action of the court in confirming the sale of the property made by the special master. It may be appropriate to observe in a preliminary way before coming to the specific grounds of objection to the sale that the court is vested with a reasonable measure of judicial discretion in determining whe-

422

ther a sale of property made by the special master shall be confirmed or a resale ordered, and that the exercise of that discretion in confirming a sale will not be disturbed on appeal except in case of abuse. Pewabic Mining Company v. Mason, 145 U.S. 349, 12 S.Ct. 887, 36 L.Ed. 732; Bovay v. Townsend, 8 Cir., 78 F.2d 343, 105 A.L.R. 359.

One ground of attack upon the order of confirmation is that the notice was insufficient and misleading and constituted an irregularity sufficient in substance to require the setting aside of the sale. After Breeding Motor Coaches, Inc., and Breeding Motor Freight Lines, Inc., acquired from the Breedings the property involved in the foreclosure proceeding certain certificates of convenience and necessity issued by the Interstate Commerce Commission and by state regulatory bodies were surrendered and cancelled and new or substitute operating permits were issued to the corporations. But the new or substitute permits covered the same routes as their predecessors. They differed only in number and name of permittee. The notice of sale described these permits by reference to the numbers on the originals as set forth in the chattel mortgage given by the Breedings rather than by the numbers appearing on the substitute certificates. The notice also described certain operating rights in Missouri by reference to the numbers on permits issued to Tri-State Motor Transport, Inc., prior to the time the property was sold to the Breedings rather than by the number on a later consolidated permit on which the judgment creditors had a lien. And there may have been other instances in which the notice described operating permits by reference to the original numbers rather than by the numbers on later or substitute certificates. In three instances, permits described in the notice had expired. And it may be conceded that there were other fairly comparable mistakes in the notice. After entry of the original judgment and prior to the issuance of the publication of the notice of sale, the property constituting the terminal in St. Louis and certain other property was sold. The sale was made by agreement of the parties in interest and with the approval of the court, and the proceeds therefrom were properly applied. That property was omitted from the notice of sale. But in all other respects the notice followed with meticulous accuracy and detail the description of the property contained in the deeds of trust, the real estate mortgages, and the chattel mortgages; and the time and place of the sale was stated in clear and unmistakable language. The purpose of a notice of a judicial sale is to inform the public of the kind and condition of the property to be sold, the time, the place, and the terms of the sale. It is to secure bidders and prevent the sacrifice of the property. The notice should contain such a description of the property as will enable intending purchasers in the exercise of ordinary diligence to identify it, but a minute description extending into details is not essential to a valid sale. It is sufficient if the information given in the notice enables the public to understand what property is being offered for sale and to identify it if more particular information is desired. Newman v. Jackson, 12 Wheat. 570, 6 L. Ed. 732. And generally a notice of sale is not open to tenable objection in respect to the description of the property to be sold if it describes the property in strict conformity with the description contained in the mortgage, or judgment, as the case may be. Bell Silver & Copper Mining Co. v. First National Bank of Butte, 156 U.S. 470, 15 S.Ct. 440, 39 L.Ed. 497.

Here, the notice of sale complied with these general requirements and there is no showing in the record that the failure to describe the operating certificates by reference to the serial number and name of permittee in the new or substitute certificates, or the other mistakes or omissions of which complaint is made, mislead any one, deterred bidders, or depressed the bidding at the sale. So far as the record discloses, they were merely immaterial inaccuracies or mistakes which did not prevent the property from bringing a higher price. And mere irregularities of that kind in the notice of sale which result in no prejudice to the parties do not require the court in the exercise of its sound judicial discretion

to vacate the sale. Cooper v. Foss, 15 Neb. 515, 19 N.W. 506; Senge v. Border, 319 Pa. 481, 181 A. 509.

A second ground of attack upon the sale is that the property constituting the terminal at Joplin, Missouri, was sold without being appraised. This was a public sale and therefore the federal statutes, 28 U.S.C.A. §§ 847-849 [now §§ 2001, 2002, 2004], did not require an appraisal of the property. Pan American Petroleum Co. v. Chase National Bank, 9 Cir., 83 F.2d 447. The judgment provided that the real estate in Oklahoma should be appraised and sold according to law, and it provided that all sales of personal property should be without appraisement. But it was silent in respect to appraisement of the real estate in Missouri. The alias order of sale directed the special master to advertise and sell the personal property without appraisement, and the real estate with appraisement, according to law and as directed in the judgment. An officer selling property under a judgment of a court can sell only in substantial compliance with the terms and conditions provided in the judgment and the law governing a sale of that kind which is incorporated into and made a part of the judgment. American Dirigold Corporation v. Dirigold Metals Corporation, 6 Cir., 125 F.2d 446. But since neither the judgment nor the applicable law required that the real estate in Missouri be appraised, the provision in the order of sale concerning appraisement according to law and as directed in the judgment of the court was unauthorized and had no effect whatever upon the sale of the property constituting the terminal at Joplin.

The third ground of attack upon the sale is that the manner in which the personal property was offered for sale discouraged bidders, chilled the bidding, and resulted in a grossly inadequate price. The judgment did not contain detailed directions in respect to the manner in which the property should be offered for sale, whether in parcels or en masse. The master offered the personal property for sale in these units (1) the property of the freight operation, including trucks, passenger cars, dock and shop equipment, office equipment, parts and accessories, and all other tangible property, (2) the Tri-State franchises, (3) the Lyman freight operating permits, (4) the bus equipment, (5) the bus franchises, and (6) some parts and accessories sometimes referred to as the Reeves equipment. After the personal property had been sold in that manner, and after the real estate had been sold, all of the property was offered as a whole. In the absence of a provision in the judgment of foreclosure concerning the sale of the property in parcels or en masse, the special master or other officer of the court charged with the duty of making the sale is vested with a reasonable discretion in that respect. Here, the master exercised his best judgment in offering the property for sale in units and then as a whole. We fail to find in the record convincing indication that the parties in interest were prejudiced as the result of the manner in which the master offered the property for sale, first in parcels and then en masse. Therefore the sale was not open to attack on that ground. Kane v. Jonasen, 55 Neb. 757, 76 N.W. 441; Miller v. Trudgeon, 16 Okl. 337, 86 P. 523, 8 Ann.Cas. 739; Lawton Mill & Elevator Co. v. Farmers' & Merchants' Bank, 109 Okl. 291, 234 P. 705.

The fourth ground of attack upon the sale is that the special master violated the directions contained in the judgment in respect to the deposit required of the bidder as a pledge that he would make good his bid. The judgment provided that the master should not accept any bid unless the purchaser should deposit with the master the sum of $300 in cash or by certified check as such pledge. At the sale, the master announced that the successful bidder should make a deposit of one-tenth of the amount of the bid to show good faith, the remainder of the bid to be paid upon confirmation of the sale. The action of the master constituted a departure from the direction contained in the judgment. But there is not the slightest indication in the record that it depressed the bidding or brought about a lower price for the property in the end than would have been received if the decree had been followed.

While the master should have followed the injunction of the judgment in respect to the amount of the deposit, in the absence of any showing of prejudice, we do not think that the irregularity warrants us in overturning the action of the trial court in confirming the sale.

■■■■ And the last ground of attack upon the sale is that the gross inadequacy of price obtained together with the irregularities in connection therewith warrants its vacation. It is the well established rule that a judicial sale regularly made with notice and in the manner prescribed by law will not be denied confirmation or be set aside for mere inadequacy in price unless the price is so gross as to shock the conscience of the court, coupled with slight additional circumstances indicating unfairness such as chilled bidding. Ballentyne v. Smith, 205 U.S. 285, 27 S.Ct. 527, 51 L.Ed. 803; Gelfert v. National City Bank, 313 U.S. 221, 61 S.Ct. 898, 85 L.Ed. 1299, 133 A.L.R. 1467; Scott v. Jones, 10 Cir., 118 F.2d 30. Here the facts fail to show that the price obtained at the sale was so gross as to shock the conscience of the court and there is no showing of chilled bidding.

■■■■ The next contention urged is that the court erred in denying the motion of the Breedings, Breeding Motor Coaches, Inc., and Breeding Motor Freight Lines, Inc., to vacate the judgment entered in the foreclosure proceeding for the reason that the note and mortgages given to the bank were not approved by the Interstate Commerce Commission. With certain exceptions not having application here, section 20a, Title 49, United States Code, provides in presently material part that it shall be unlawful for a common carrier to issue any stock, bond, or evidence of indebtedness of the carrier, or to assume any obligation or liability as lessor, lessee, guarantor, indorser, surety, or otherwise, in respect to any securities of any other person, natural or artificial, unless and until the Interstate Commerce Commission first authorizes its issuance or assumption; and that any security issued or assumed without such authorization shall be void. And

section 314, Title 49, supra, provides among other things that common or contract carriers by motor vehicle, corporations organized for the purpose of engaging in transportation as such carriers, and corporations authorized by order of the Interstate Commerce Commission to acquire control of any one or more such carriers, shall be subject to paragraphs 2 to 11, inclusive, of section 20a, provided however that such provisions shall not apply to such carriers or corporations where the par value of the securities to be issued, together with the par value of the securities then outstanding, does not exceed $500,000. In New York, Chicago and St. Louis Railroad Company v. Frank, 314 U.S. 360, 62 S.Ct. 258, 86 L.Ed. 277; the appellant, commonly called the Nickel Plate Road was organized as a consolidated corporation. One of the constituent companies in the consolidation was the Lake Erie & Western Railroad. In connection was a lease of certain properties from the Northern Ohio Railway, the Lake Erie & Western Railroad had guaranteed payment of the principal and interest upon the bonds of the Northern Ohio Railway Company secured by a mortgage on the leased property. The suit was upon defaulted coupons. Liability of the Nickel Plate Road was predicated upon the assumption of the guaranty of the Lake Erie & Western Railroad. One ground of defense interposed by the Nickel Plate Road was that approval by the Interstate Commerce Commission was necessary under section 20a, supra, before the obligation could be assumed. The Interstate Commerce Commission had never entered an order authorizing the Nickel Plate Road to assume the obligation. But the defense of nonliability for lack of such approval before assumption of the obligation was not sustained. The court held in effect that by a series of actions, unnecessary to detail here, the Interstate Commerce Commission gave unmistakable recognition to the validity of the guaranty and that recognition was sufficient. Here, the original loan was made in good faith. The note, deeds of trust, real estate mortgages, and chattel mortgage were given in good faith. And the Breedings received and used for

their benefit more than $250,000 of the funds. After the Reconstruction Finance Corporation acquired the certificates of convenience and necessity at the special master's sale, it entered into contracts to sell some of such certificates to subsequent purchasers. The purchasers filed applications with the Interstate Commerce Commission for the approval of such transfers. The Breedings, Breeding Motor Freight Lines, Inc., and perhaps Breeding Motor Coaches, Inc., filed objections to such approval on the ground that the foreclosure proceeding was void for the reason that the note, deeds of trust, real estate mortgages, and chattel mortgage given to the bank were not authorized in advance by the Commission. After a full hearing, the Commission approved the transfer of some of the certificates of convenience and necessity acquired by the Reconstruction Finance Corporation at the master's sale. By that action, the Commission gave unmistakable recognition to the validity of the note, deeds of trust, real estate mortgages, and chattel mortgage given to the bank. In view of all the facts and circumstances, it cannot be said that the court erred in denying the motion to vacate the judgment on the ground of the invalidity of the note and security for want of approval by the Commission in advance of their execution. New York, Chicago and St. Louis Railroad Company v. Frank, supra.

We come now to the appeal of the Reconstruction Finance Corporation from the finding of fact made by the court that the note given to the bank was in an amount which required authorization of the Interstate Commerce Commission; from the conclusion of law that the note and mortgages given to the bank constituted securities, within the meaning of section 20a and 314, supra; and from the conclusion of law that the language of such sections required the approval of the note and mortgage. Save for excepted instances in which it is otherwise provided by statute, an appeal to this court lies only from a final order or judgment. Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478; State Tax Commission of Utah v. United States, 10 Cir., 136 F.2d 903. And a finding of fact or a conclusion of law is not such a final order or judgment.

The appeal of the Reconstruction Finance Corporation from the finding and conclusions of the court is dismissed; and the orders and judgments from which the other appeals were perfected are severally affirmed.