**Diona S. RINGER, Plaintiff,**

v.

**Thomas M. BASILE; G.L. Mihlbacher, Juan Rodriguez, Anthony Roybal, and the United States of America (in the form of its agency the Internal Revenue Service, IRS) and All Unknown Parties Who May Claim an Interest in the Real Estate In Question, Defendants.**

Civ. A. No. 85–K–2161.

United States District Court,
D. Colorado.

Oct. 20, 1986.

James A. Mundt, Colorado Springs, Colo., for plaintiff.

John D. Steffan, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Nancy Rice, Dahil Goss, Asst. U.S. Attys., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### I. BACKGROUND

In August, 1984, co-defendant Internal Revenue Agents Juan Rodriguez and Anthony Roybal sold plaintiff Diona Ringer's home to co-defendant Thomas Basile for $1,725.00 in satisfaction of past due taxes owed by plaintiff. On March 11, 1985, a quitclaim deed of the property was transferred to Basile by co-defendant G.L. Mihlbachler, District Director of the Internal Revenue. According to plaintiff (plaintiff is now deceased, however, she willed her interests in the subject property to her daughter and son who continue to represent those interests in this matter), she did not receive notice of the sale until April 11, 1985, when Basile informed her he had obtained ownership of the property. Although plaintiff thought *all* of her tax liability was being satisfied by garnishment of her wages, as it turned out, *only part* of the liability was actually being satisfied by the garnishment. There are factual disputes concerning plaintiff's notice of the sale which can only be resolved at trial.

Pursuant to Colo.R.Civ.P. 105, plaintiff filed a quiet title action in the state district court against Basile, Mihlbachler, Rodriguez, Roybal, and the United States (all co-defendants in this case except for the United States which was dismissed as a defendant for lack of personal jurisdiction). In her complaint, plaintiff requested an order (1) declaring she was the rightful owner of the property and (2) an injunction against defendants prohibiting them from claiming any interest in or title to her house. Additionally, after this case was removed to federal court, plaintiff amended her complaint adding a claim against Mihlbachler, Roybal, and Rodriguez for "inequitable conveyance".

In her Second Claim for Relief set forth in the amended complaint, plaintiff contends the sale of her property by the federal defendants to satisfy unpaid federal tax liabilities constituted an inequitable conveyance in violation of the spirit of the statutes and regulations governing the sale of taxpayer property, since the federal defendants failed to realize, and even failed to attempt to realize, anything approaching a reasonable price for the property. Plaintiff argues the house was sold for a grossly inadequate amount—a mere $1,725.00 when the house, plaintiff asserts, was worth over $40,000.00 (and she had over $40,000.00 paid in equity). Thus, plaintiff seeks an award of damages and invalidation of the sale.

On June 10, 1986, I issued a Memorandum Opinion and Order in which I ruled this action may proceed against the federal defendants. I reserved ruling on whether plaintiff may assert a claim for an "inequitable conveyance". I instructed the parties to file memorandum briefs on the issue of "inequitable conveyance". The parties have done so. The matter is now before me on the United States' motion to dismiss the amended complaint, specifically on the issue of inequitable conveyance.

### II. DEFENDANTS' ARGUMENT ON INEQUITABLE CONVEYANCE IN SUPPORT OF THE MOTION TO DISMISS

Defendant argues: (1) plaintiff's second claim for relief in the amended complaint fails to state a claim upon which relief can be granted; and, (2) this court lacks subject matter jurisdiction over plaintiff's second claim for relief. I shall address each argument, and sub-arguments thereof, in turn.

### A. THE STATUTORY REQUIREMENTS AND EXISTING CASE LAW FOR THE SEIZURE AND SALE OF PROPERTY FOR THE COLLECTION OF TAXES [1]

---

1. The relevant statutory structure can be found at 26 U.S.C. §§ 6331–6339. In pertinent part (§ 6335(e)), the statute reads:

 Before the sale the Secretary shall determine a minimum price for which the property shall be sold ... In determining the minimum price the Secretary shall take into account the expenses of making levy and sale.

 The Treasury Regulations, § 301.6335–1(b)(3) set forth similar regulations:

The government argues plaintiff's cause of action for inequitable conveyance fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). According to the government, the Internal Revenue Service is under no obligation to sell seized property at its fair or reasonable market value. *See Crump v. United States,* 17 A.F.T.R.2d 637, 639 (N.D.Ga.1966) (claim that the sale of petitioner's automobile should be set aside because the minimum bid price was not based upon his equity in the automobile and did not state a valid cause of action); *Kjar v. United States,* 36 A.F.T.R. 1593, 1594–1595, 47–1 U.S.T.C. para. 2985, 12,624–12,625 (Ct.Cl.1947) (there is no provision of law which casts upon a collector the duty to realize from a sale of property its full market value, and which makes the United States liable if he fails to do so); *Miracle Span Corporation v. United States,* 50 A.F.T.R.2d, para. 82–5101 (D.S.D.1982) (rejected the notion that the government has the same duties as in the Uniform Commercial Code §§ 1–203 and 9–504 which require disposing of collateral in good faith and in a commercially reasonable manner).

Thus, defendants assert the language of § 6335(e) and the regulations thereunder (*See* footnote 1, *supra* ): (1) merely require the government to set a minimum bid price which takes into account the costs of levy and sale; and, (2) do not require the government to realize any price from a sale of seized property other than the minimum bid price. Defendants argue there is no language in the statute or the regulations which would give rise to an inference that the government is under an obligation to realize from a forced sale the full, fair market value of the taxpayer's asset, or the taxpayer's equity in any asset. Therefore, plaintiff's inequitable conveyance claim should be dismissed as a matter of law.

> The district director shall determine a minimum price, taking into account the expenses of levy and sale, for which the property shall be sold ...

**2.** The exact dollar amounts are indeterminable from the record and pleadings. The term "over $40,000.00" was used to describe both, plaintiff's

Plaintiff responds by asserting her position *is not* to request the *full, fair market value* of her property. To the extent she so implies in certain instances in her brief that she should receive the full, fair market value, her claim, as a matter of law, must fail based on the cases cited by defendant. She realizes the Secretary is permitted to set a minimum price pursuant to his discretion for which the property shall be sold. Plaintiff contends, however, this discretion does not authorize the Secretary or his delegees to take a "cavalier attitude" toward a taxpayer's property, but requires, at least, a good faith effort in obtaining a price which is, at least, *somewhere* in the "ball park" of reason.

This argument is a very subtle one, but subtlety does not mean it is necessarily a weak one. It simply means the argument must be explained and reasoned with greater care than a pellucid one. First, plaintiff is not requesting the full market value for her house (over $40,000.00) or the full equity in her house (also over $40,000.00) [2]. Much of defendant's legal argument and cited authority, however, announce law that is not in point. The cases state the "full, fair market value" is not required to be realized by the IRS. Full fair market value, however, is *not* what plaintiff requests. Secondly, plaintiff does not attack the Secretary's right to set a minimum price *far below* the fair market value. From the nature of plaintiff's argument, a price of, say, $30,000.00, or perhaps even $20,000.00, for this $40,000.00 house, would be considered by plaintiff to be "low" but not, as yet, "unconscionable" so as to make it an actionable wrong. Such differences in price, though large they may be, are still considered to be within the proper discretion of the Secretary. The cases defendant has cited clearly support this proposition.

equity, and, the full, fair market value of the house, in plaintiff's pleadings. Defendants have never rebutted or challenged this assertion since this litigation began in 1984, therefore, I shall assume the figures to be correct and will treat them as such for the purposes of ruling on this motion.

See *Crump, Kjar,* and, *Miracle-Span, supra.*

### 1) *The Cases Cited By Defendant Do Not Address the Issue Raised By Plaintiff.*

In *Crump, supra,* for example, a 1964 Ford Mercury automobile was sold for $81.00 plus the assumption of a $2,400.00 chattel mortgage against it. It was not necessary to take into account the taxpayer's equity in the automobile in determining the minimum bid price. The difference in the equity and corresponding fair market value of the car, however, and the actual IRS selling price in the *Crump* case, was nowhere near the same magnitude of price disparity as in the instant case. The IRS selling price of the car was only $81.00. When the assumption of the mortgage is taken into account in determining the price as was the case in *Crump,* however, the price of the car was actually $2,481.00.[3] Indeed, the court stated *the price was "fair" because the IRS took the assumption of this mortgage into account when it determined the minimum bid price.*

In the instant case, assumption of the mortgage is *not* part of the sale of the house, nor is there any indication that, because of the mortgage, the minimum bid price is "fair". Apparently, there are some mortgage payments left to be paid on the house, but the exact amounts have not been submitted (*See* footnote 2, *supra*). Based on the information available to me in the record, the remaining mortgage amount is very small relative to the equity in the house (and its fair market value) which is "over $40,000.00". Thus, the mortgage is but a small percentage of the equity plaintiff has accrued in the house.

The most important point, however, is that the government has never stated the mortgage was "part of the deal" with purchaser and co-defendant Basile, as was the case in *Crump.* In fact, Basile's last *pro se* motion requested an order to compel plaintiff to pay the arrears on the house. Plaintiff had been paying the mortgage payments but in the last few months of her life she either refused to pay pending the outcome of this case or, because of her illness, was simply unable to pay them.

The reason I have digressed into these fact-specific explanations is to demonstrate the different manner in which the minimum bid prices were derived in the *Crump* case and the instant case. I also digress in order to demonstrate the difference between *Crump* and the other cases cited by defendants relating to the non-recovery of the full fair market value of the taxpayer's seized property and the instant case.

$1,725.00 (the price Basile payed for the house) multiplied by a factor of 23.6 (23.6 is the number of times the actual price— $1,725.00—must be multiplied in order to arrive at the fair market value of the house and amount of equity plaintiff has acquired in the house—over $40,000.00) equals $40,- 710.00 (which is a fair dollar figure considering the house is worth "over $40,000.00). Thus, the difference in the instant case between the actual selling price and the fair market value and equity is a multiplying factor of 23.6.

In *Crump,* the purchaser paid $2,481.00 for the seized property, a 1964 Mercury automobile (recall, the $2,400.00 mortgage was part of the IRS' determination of the minimum bid price). When comparing the dollar figures in *Crump* with those of the instant case, the selling price in *Crump* ($2,481.00) multiplied by the disparity factor between the actual selling price and the fair market value (and plaintiff's equity) which was determined to be 23.6, would equal $58,551.60 (e.g., $2,481 \times 23.6 = 58,-551.6$).

For the cases to be strictly analogous with respect to the dollar amounts, in

---

**3.** The $2,481.00 figure is a bit high (perhaps by $50.00 to $150.00) since the net present value of the loan is not taken into account. To take the net present value into account, I would need to know the interest rate of the mortgage and how it relates to the inflation rate over the period of the mortgage. I simply do not have access to this information, however, these *relatively* small marginal amounts are of no consequence since I use them only to compare huge disparities in the actual selling prices and fair market value prices (and equity) presented in the respective cases.

*Crump* the 1964 Mercury automobile would have to have had a fair market value (and owner's equity) of $58,551.60. If $58,551.60 seems "very high" for a used Mercury, but still somewhere in the "ball park" of reason, one should consider that dollar amount is expressed in 1965 dollars, that is to say, inflation has not yet been taken into account. In 1986 dollars, $58,551.60 (in 1967) would be worth approximately $175,654.80 today.[4] It is obvious a Mercury does not sell today for $175,654.80 nor would it have sold for that equivalent amount in 1965—$58,551.60. For the cases to be analogous with respect to the price disparities between actual selling price and fair market value, the Mercury would have to have been worth $57,545.00 in 1965. In short, the disparities between actual selling price and fair market value in *Crump* are not relevant to the excessive magnitude of disparity present in the instant case. It is this difference which places the instant case in a different category than that of the *Crump* case. Thus, it is distinguished.

Defendants cite cases which deal with discretionary pricing on the part of the IRS where such disparities in pricing do not "shock the judicial conscience". The instant case, on the other hand, is in a different category all together. Here the disparity in prices is not simply a matter of discretion (or where the price is "very low" but still in the "ball park of reason"); instead, it is a case where the disparity is patently unreasonable. A $40,000.00 home has been sold for $1,725.00. No amount of casuistry will dissipate the egregiousness of that result.

In *Kjar, supra,* the court does not set out any prices, thus a mathematical and economic comparison, like the one done above with respect to the *Crump* case, is impossible. The case does state, however,

the government has no responsibility to realize the *"full market value"* of the seized property. Again, there are no contentions with that proposition. The issue is not whether the IRS realized the full market value of the seized property, but whether the IRS has an *unlimited* amount of discretion and can sell seized property at a price so low it is conspicuously unjust.

For example, defendants' legal position suggests the IRS, in order to collect back taxes, can sell a multi-million dollar housing development for some "ridiculously" low price, say, $1,800.00, provided the $1,800.00 "minimum bid price takes into account the costs of levy and sale". Conceivably, $1,800.00 could cover the back taxes (say, $800.00) and the costs of levy and sale (say $1,000.00). To assert the sale in this example would be legal embraces the absurd. I will not create a precedent, given the facts of this case, which would permit unfettered "discretion." Discretion must have limits lest it become a license to commit obvious injustice.

Congress did not intend such unfettered discretion. Defendants argue the statute (26 U.S.C. § 6335(e)—*See* footnote 1) requires only that the Secretary,

> in determining the minimum price, *take into account* the expense of making a levy and sale. (emphasis added).

The statute, however, does not say: "the *only* thing which determines the minimum bid price is the cost of levy and sale." To the contrary, it states: "the Secretary shall *take into account* the costs of the levy and sale". Thus, defendants argument that the statute requires the IRS to set the price *only* with respect to the costs of levy and sale is incorrect. The limits placed on the discretion do not *end* with the costs of levy and sale, they only *begin* there. Other limitations exist at common law.

---

**4.** With 1967 as the base year (1967 = 100), in 1982, the Consumer Price Index (CPI) was 290.01. This means the cost of buying consumer goods in 1982 was 2.9001 times as high as it was in 1967. Thus, to compare different years and their respective prices without the distortion of prices caused by inflation, the base year dollar amount must be multiplied by a factor of 2.9001. I rounded off and used a multiplying factor of 3, however, note that the actual years are 1965 (two years earlier than the base year) and 1986 (four years later than the 1982 CPI), thus, a CPI factor of 3 is extremely conservative since it does not account for 6 years of inflation. *See Economic Report of the President,* 1982, Table B–53, *quoted in* Stanely Fischer and Rudiger Dornbush, *Economics,* (New York: McGraw-Hill, 1983), p. 539, Table 21–3.

In *Miracle-Span Corp., supra,* cited by defendants, the plaintiff corporation contended it had a going concern value of $2,730,000.00, and that it was entitled to a valuation of the "going concern" in that amount. The government valued (sold) the business at $1,472,938.04 (or just over half of what it was worth). Although the court stated the government had no duty to dispose of the collateral in good faith or in a commercially reasonable manner, the case involved a price that was simply "very low" but not so low as to "shock the judicial conscience" making it so unconscionable it would be on the same level of egregiousness as fraud, mistake, or accident. Again, selling plaintiff's home at over half of what it is worth (50% of $40,000.00 = $20,000.00) is a far cry from selling it at less than 5% of what it is worth (4.3125% of $40,000.00 = $1,725.00). The *Miricale-Span Corp.* case, therefore, still does not reach the issue raised by plaintiff—whether a selling price can be so low it moves out of the category of the IRS' range of discretion and into the realm of outrageousness and constituting something akin to fraud, mistake, or accident.

As a rejoinder, defendants argue mere inadequacy of price is an insufficient basis upon which to invalidate a sale. *Ballentyne v. Smith,* 205 U.S. 285, 290, 27 S.Ct. 527, 528, 51 L.Ed. 803 (1907); *Breeding Motor Freight Lines, Inc. v. Reconstruction Finance Corp.,* 172 F.2d 416, 424 (10th Cir.) *cert. denied,* 338 U.S. 814, 70 S.Ct. 54, 94 L.Ed. 493 (1949); *United States v. Howard,* 296 F.Supp. 264, 265 (D.Or.1968). In *Howard, supra,* the taxpayers asserted that in a lien foreclosure, the government had conducted previous sales of their property in such an unlawful and unconscionable manner that the property was sold to persons who were not the highest bidders and at prices which were a small fraction of the value of the property. The court found that the allegations of inadequacy of price, without more, did not present a genuine issue for trial. 296 F.Supp. at 266.

The reason the claim failed, however, was not because there is no such available claim at law; instead, the claim failed because defendant made no factually-supported allegations. He merely stated the conclusion that the price was unconscionably low. Obviously, without more of a showing a court cannot proceed.

Plaintiff points out that the Tenth Circuit case of *Breeding Motor Freight Lines, supra,* also cited by defendants (above), stands for the proposition that at some point "mere inadequacy of price" (a difference of degree, so to speak) transforms into an actionable wrong when it becomes so low it shocks the judicial conscience (a difference of kind). In *Breeding,* the court stated:

It is a well-established rule that a judicial sale regularly made with notice and in the manner prescribed by law will not be denied confirmation or set aside for mere inadequacy of price *unless the price is so gross as to shock the judicial conscience of the Court* ... (emphasis added).

*Id.* at 424.

This is exactly the type of conduct of which plaintiff complains—the selling of her personal residence (without notice, she alleges) and at a price so low it shocks the judicial conscience. The holding in *Breeding, supra,* (a Tenth Circuit case recognizing a claim based on severe inadequacy of price if the price is so low as to shock the judicial conscience) has been followed in *Smith v. Juhan,* 311 F.2d 670, 672 (10th Cir.1962) (another Tenth Circuit case recognizing a claim for abuse of discretion in the sale of plaintiff's assets and determination of unconscionably low price depends upon the fact situation and actual price disparities); and, *Magnolia Springs Apartments, Inc. v. United States,* 323 F.2d 726, 728 (5th Cir.1963) (recognizing the claim "that the price was so inadequate as to shock the judicial conscience"); and, finally, *Citibank, N.A. v. Data Lease Financial Corp.,* 645 F.2d 333 (5th Cir.1981) (recognizing the claim that the sale price can be so low as to shock the judicial conscience).

In all of the above cited cases, the fact situation (price disparities) did not warrant

recovery for the plaintiffs (i.e., the prices were merely "very low" but not so low as to shock the judicial conscience). The sale prices were usually about one-half, or perhaps one-third, of what plaintiffs claimed the assets actually were worth. The fact that they did not end up recovering on their claims, however, is not determinative for the purposes of this motion because I need only determine whether plaintiff has a cognizable claim and not, as yet, whether plaintiff will recover.

■ The Tenth Circuit cases clearly recognize plaintiff's claim. So although defendants correctly cite law which states mere inadequacy of price (very low price) is not a cognizable claim, plaintiff correctly cites law which states if the selling price is so low as to shock the judicial conscience, a court may grant relief and set aside the sale. Thus, defendants' motion to dismiss for failure to state a claim upon which relief can be granted must be denied with respect to this issue. Although no cases expressly employ the term "inequitable conveyance", there still exists a claim at law which recognizes the underlying concept of "inequitable conveyance".

## B. EQUITY CONSIDERATIONS

### 1) *Applicability of the Anti-Injunction Act.*

Next, defendants argue plaintiff's claim, insofar as it includes equitable relief (recision of the sale), is barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a) which states, in pertinent part:

... [N]o suit for the purpose of restraining the assessment or collection of any taxes shall be maintained in any court by any person, whether or not such person is the person against whom the tax was assessed.

Defendants argue further the Supreme Court has given "an almost literal reading to this provision". *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496, 74-1 U.S.T.C. Para. 9438

(1974) (Anti-Injunction Act provides in general no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court, and that the Act's purpose is to protect the government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference); *Enochs v. Williams Packing and Navigation Co., Inc.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) (Anti-Injunction Act prohibits suits to restrain the assessment or collection of a federal tax, but is inapplicable pursuant to certain statutory exceptions and where it is clear that under no circumstances can the government prevail and if it is apparent, on the basis of the information available to the government at the time of suit, that, under the most liberal view of law and facts, the United States cannot establish its claim).

Plaintiff argues the Anti-Injunction Act is inappropriately raised here because plaintiff is not seeking to restrain the assessment or collection of any tax (she is totally willing to pay the taxes in full); but is, instead, only attempting to quiet title to land she asserts was illegally sold. To the extent, however, that "to quiet title to land illegally sold" means issuing an injunction or granting any other such equitable relief, she must address the Anti-Injunction Act provisions. She fails to do so and she cites no law.

It has been held that illegality, by itself, is not sufficient to confer jurisdiction on a federal district court in order to issue equitable relief. *See Williams v. Wiseman*, 333 F.2d 810 (10th Cir.1964). Although plaintiff does not address the issue raised by defendants, I am not bound by defendants' arguments. In the pursuit of justice, I may raise, *sua sponte*, the legal issues to be considered in this case.

First of all, there is a myriad of circumstances under which the Anti-Injunction Act does not apply, e.g., certain statutory exceptions, judicial exceptions, fact-specific exceptions, common-law exceptions, etc.[5]

---

5. I refer the litigants to 46 L.Ed.2d 932 where an annotation concerning the Supreme Court's construction and application of the Anti-Injunction

Act (26 U.S.C. § 7421(a)) can be found. I also refer them to the annotated versions of the United States Code Service where many case

One such exception is that of improper notice to the taxpayer of the tax sale.

It has been held that federal courts have the power to issue equitable relief, notwithstanding the Anti-Injunction Act, if notice was executed improperly. Examples exist with respect to several provisions of the tax code in general. *See Margiotta v. District Director of the Internal Revenue,* 214 F.2d 518 (2nd Cir.1954) (Anti-Injunction Act has no application to suit against purchaser in possession to set aside sale by government of assets of taxpayer which was defective for non-compliance with notice requirements); *Maxwell v. Campbell,* 205 F.2d 461 (5th Cir.1953) (failure to give taxpayers required 90–day notice entitled taxpayers to enjoin collector and his deputy from making any levy, seizure, or distraint under authority of purported deficiency assessments); *Granquist v. Hackleman,* 264 F.2d 9 (9th Cir.1959) (Taxpayer had right to obtain, and district court had authority to issue, injunction restraining District Director from assessing additional taxes to 1954 taxes without fully complying with 26 U.S.C. § 6213).

Most importantly, with respect to the notice requirements set forth in 26 U.S.C. § 6335 for the sale of seized property which plaintiff claims were violated by defendant, several cases hold § 6335 must be literally complied with *and if it is not the court may set aside the tax sale. See Reece v. Scoggins,* 506 F.2d 967, 26 A.L.R. Fed. 374, 75–1 U.S.T.C. Para. 9202 (5th Cir.1975) (the court set aside a tax sale on the grounds that the IRS failed to give the taxpayer the statutorily-required notice of the sale of land seized for failure to pay federal taxes); *Kelly v. Lunding,* 131 Ill. App.3d 410, 86 Ill.Dec. 714, 475 N.E.2d 1093 (1985) (tax sale held invalid because of the lack of personal service on the taxpayer); *Howard v. Adle,* 538 F.Supp. 504 (E.D. Mich.1982) (although tax sale was upheld, the court declared the tax sale would have been invalid if notice requirements had not been properly met); *Aqua Bar & Lounge, Inc. v. United States Department of Treasury, IRS,* 438 F.Supp. 655, 77–2 U.S.T.C.

examples of exceptions to the Anti-Injunction

Para. 9552 (E.D.Pa.1977) (sale of restaurant liquor license was declared null and void because of failure to give the owner proper personal notice of the sale).

■ Since it has not been proved (this is a factual determination which must await trial for its resolution), it is, at present, still a question whether plaintiff did not receive proper notice. Thus, it would be premature to dismiss this claim at this early juncture because the Anti-Injunction Act, as we have seen, will not apply in this case *if it is found at trial that notice was improper. See Reece, Kelly, Howard,* and, *Aqua Bar, supra.*

Other reasons as to why the Anti-Injunction Act may or may not apply need not presently be addressed. I, therefore, reserve judgment on the issue of applicability of the Anti-Injunction Act. At a minimum I recognize I cannot dismiss this action based on the Anti-Injunction Act pending the outcome of the factual determination on whether notice was properly executed.

I note, in passing, the case of *Pascoe v. I.R.S.,* 580 F.Supp. 649, 84–1 U.S.T.C. Para. 9272 (E.D.Mich.1984), *aff'd* 755 F.2d 932 (6th Cir.1985) in which the Anti-Injunction Act could not serve as a bar to taxpayer's action at law for damages against an IRS agent, since the taxpayer's claim, broadly construed, was one for violations of constitutional rights against a federal officer acting beyond the scope of his federal authority. Insofar as plaintiff's claim is for money damages, the Anti-Injunction Act does not bar it from proceeding.

### 2) *Other Equitable Relief.*

Defendants proceed to make other related arguments concerning plaintiff's inability to request equitable relief. For example, defendants argue when "plaintiffs seek equitable relief, they must show that they themselves have done equity" (acted in accordance with the law and in a legally responsible manner) *Howard v. Adle,* at 508. Whether plaintiff "has done equity" ("clean hands doctrine") is a matter which

Act can be found.

must be determined at trial. Defendants argue plaintiff was properly notified of the sale of her property and, therefore, since she acted in such utter disregard for the law, she cannot now come to court requesting equity. Plaintiff, on the other hand, asserts she was not notified of the sale of her house until after the sale was executed and she therefore has not acted in a manner which disregards equitable notions (she comes to court "with clean hands"). The problem is defendants' arguments are premised on the grounds that notice was proper. This is a factual dispute which must be resolved at trial and not by me in a ruling on a motion to dismiss. If there was proper notice, then plaintiff could not now come to court requesting equity. On the other hand, if there was no proper notice, then plaintiff is permitted to request equity. Thus, similar to the issue of whether the Anti-Injunction Act is applicable, dismissal, at this juncture, would be improper.

## C. SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S SECOND CLAIM FOR RELIEF

Defendants argue plaintiff's second claim for relief in the amended complaint ("inequitable conveyance") should be dismissed because there has been no sufficient waiver of sovereign immunity and, therefore, subject matter jurisdiction cannot be conferred properly upon this court. *See United States v. Alabama*, 313 U.S. 274, 282, 61 S.Ct. 1011, 1014, 85 L.Ed. 1327 (1941) (plaintiff must demonstrate that there are statutes which (1) waive sovereign immunity, and, (2) confer subject matter jurisdiction upon the court); *United States v. Sherwood*, 312 U.S. 584, 586–587, 61 S.Ct. 767, 769–770, 85 L.Ed. 1058 (1941); *United States v. Shaw*, 309 U.S. 495, 501, 60 S.Ct. 659, 661, 84 L.Ed. 888 (1940); *Krouse v. United States*, 380 F.Supp. 219, 221, 75–1 U.S.T.C. Para. 9364 (C.D.Cal. 1974).

Plaintiff responds by simply stating that I have already ruled she may proceed against the individual defendants in this case. In my Memorandum Opinion and order of June 10, 1986, at p. 3, I stated:

It is asserted in the amended complaint ... the agents acted in violation of the due process clause and contrary to the applicable statutes by purportedly failing to give plaintiff notice of the seizure and sale of her house. For purposes of the government's motion to dismiss, I find this is sufficient to meet the second exception to the general rule. [The "general rule" is that a suit against a federal officer is necessarily a suit against the United States and not against the individual officers. The "exception" spoken of here is when the official's actions transcend statutory or constitutional limitations.] Thus, the government's contention that the action may proceed against the United States is without merit.

Before continuing, I need to point out an error in the language just quoted. I stated the amended complaint contained allegations of statutory and constitutional violations, however, plaintiff's second claim for relief in the amended complaint fails to state explicitly the constitutional violations. It does state the statutory violations and, although the constitutional violations may be "implicitly" stated, they are not explicitly stated. I shall address the implications of this omission later in this opinion.

Returning to the analysis, based upon the language quoted above, plaintiff apparently decided she did not need to respond to the issue raised by defendants. That issue is whether there has been a sufficient waiver of sovereign immunity in order to confer subject matter jurisdiction upon this court and allow this court to hear a claim against these federal defendants.

Plaintiff responds in a limited sense by citing 28 U.S.C. § 2410(a) which states:

(a) Under the conditions prescribed in this section and section 1444 of this title [28 USCS § 1444] for the protection of the United States, the United States may be a named party in any civil action or suit in any district court, or in any state having jurisdiction of the subject matter—

(1) to quiet title to,

(2) to foreclose a mortgage or other lien upon,

(3) to partition,

(4) to condemn, or

(5) of interpleader or in the nature of interpleader with respect to real or personal property or on which the United States has or claims a mortgage or other lien.

The amended complaint is expressly an action to quiet title, which, according to § 2410(a)(1), *supra*, waives sovereign immunity. To the extent the Second Claim for Relief in plaintiff's amended complaint is a quiet title action, sovereign immunity is waived. Additionally, in my opinion and order filed on February 3, 1986, I stated:

I note for the parties' information that in circumstances presented in this action, sovereign immunity has been deemed waived under 28 U.S.C. 2410. *See Aqua Bar & Lounge, Inc. v. United States Department of Tresuary [Treasury]*, 539 F.2d 935, 939–940 (3d Cir.1976); *Reese [Reece] v. Scoggins*, 506 F.2d 967 (5th Cir.1975); *Murrary v. United States*, 520 F.Supp. 1207, 1210 (D.N.D. 1981).

*Id.* at p. 6.

Although the statute allows for a quiet title action to proceed because of the statutory waiver of sovereign immunity, damage actions cannot be construed as quiet title actions. *Murray v. United States*, 686 F.2d 1320, 1326, 82–2 U.S.T.C. Para. 9607 (8th Cir.1982) *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983). Insofar as plaintiff's second claim for relief is for money damages and not to obtain equitable relief or to quiet title, the claim must be dismissed because there is no waiver of sovereign immunity for money damage claims. *Lafazan v. United States*, 79–2 U.S.T.C. Para. 9708, 88,614 (D.N.J. 1979); *Murray, supra.*

It is important not to confuse these claims in order to understand what, exactly, is barred by the Anti-Injunction Act. The entire second claim for relief cannot be dismissed because part of the claim (to quiet title) has a statutorily-granted waiver of sovereign immunity, thus only the part of the claim that requests money damages can be dismissed for lack of a waiver of sovereign immunity and thus a lack of subject matter jurisdiction.

Plaintiff does not address this argument in her response. She only addresses the issue of conferring jurisdiction and seems to assume that since § 2410(a)(1) allows a quiet title action to proceed, damage claims can be "tacked on" as well. Since § 2410(a) is not a waiver of sovereign immunity for a claim seeking to recover money damages, plaintiff cannot seek money damages pursuant to § 2410(a). As stated before, however, plaintiff may proceed with this action insofar as the complaint seeks to quiet title.

Although plaintiff cannot seek money damages pursuant to a grant of jurisdiction based on a § 2410(a) waiver of sovereign immunity, she may assert a claim for damages under an implied cause of action based upon *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (a violation of a constitutionally protected right by a federal agent acting under the color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct). Unconstitutional conduct, therefore, is an essential prerequisite for money damages and waiver of sovereign immunity is no longer a jurisdictional hurdle. *See Bivens, supra; Oldland v. Kurtz*, 528 F.Supp. 316, 319–322, 82–1 U.S.T.C. Para. 9284, (D.Colo.1981); *Davis v. Passman*, 442 U.S. 228, 239, 99 S.Ct. 2264, 2273, 60 L.Ed.2d 846 (1979).

Plaintiff argues the actions of the agents in selling her home for the unreasonable amount of $1,725.00 is the same type of "gross misconduct" as complained of in the *Bivens* case. The problem, however, is that plaintiff fails to set out the constitutional violations in her amended complaint. She merely argues in her response to defendants' motion to dismiss that the agents' actions were a "denial of plaintiff's basic rights to property guaranteed in the U.S. Constitution" (the due process clause

of the Fifth Amendment). I have found no such complaints in paragraphs 26–31 of her amended complaint dated January 27, 1986 (her second claim for relief). Plaintiff must amend her complaint to include constitutional violations if a claim for money damages is to be upheld.

Defendants argue that even if jurisdiction is conferred on these grounds (so that sovereign immunity is no longer a jurisdictional hurdle), IRS officials are absolutely immune from damage actions. Defendants cite my holding in *White v. Commissioner of Internal Revenue*, 537 F.Supp. 679, 83–1 U.S.T.C. Para. 9105 (D.Colo.1982):

> A taxpayer may challenge the constitutionality of the tax laws and the legality and fairness of IRS practices and Procedures under 28 U.S.C. § 1331(a). Meritorious claims under this statute are not compensable in damages from the United States, *American Association of Commodity Traders [v. Department of the Treasury]*, 598 F.2d [1233] at 1235–36, [(1st Cir.1979)] but may be brought against government officials who are personally liable for deprivations of constitutional rights, *Bivens* [citation omitted]. However, IRS officials are absolutely immune from damages *resulting from their decisions to initiate or continue proceedings such as audits and assessments, which are subject to later IRS adjudication. Butz v. Economou*, 438 U.S. 478, 515–516, 98 S.Ct. 2894, 2915–16, 57 L.Ed.2d 895 (1978); *Stankevitz v. IRS*, 640 F.2d 205, 206 (9th Cir. 1981). (emphasis added).

*Id.* at 684.

 Defendants use this language (except for the underscored qualifications of IRS officials' immunity which they leave out) in order to assert IRS officials are immune from damage actions in all cases no matter what the circumstances are. The underscored language cited above in *White* makes it clear that IRS officials are immune from damage actions only if the decisions result from their decisions to initiate or continue proceedings *which are subject to later IRS adjudication.* The actions complained of here are not subject to later IRS adjudication. Most importantly,

defendants fail to cite the next paragraph of my opinion which makes it completely obvious that IRS officials are not immune from damage actions:

> In order to recover damages from an IRS official in his individual capacity under Section 1331(a) personal jurisdiction must be acquired through service of process under F.R.Civ.P. 4(d)(1) or (7), the plaintiff must allege and prove specific allegations of unconstitutional conduct by the individual official she seeks to hold liable, and plaintiff must demonstrate a lack of good faith and actions beyond defendant's authority. (citations omitted).

*Id.* at 684.

Further, plaintiff, in her response to defendants' motion to dismiss, sufficiently attacks the issue of absolute immunity. Without getting to these legal arguments, I refer the parties to p. 3 of my Memorandum Opinion and Order of June 10, 1986 where I stated:

> Next, the government asserts the IRS employees are immune from suit under the circumstances of this case and, thus, must be dismissed. *Whether these defendants are entitled to immunity is a matter which cannot be decided on a motion to dismiss* since this question involves factual issues which must be submitted to a jury. Thus, *this argument for dismissal is denied.* (emphasis added).

The problem for plaintiff is that the constitutional violations must be explicitly stated in her complaint. Plaintiff has only referred to such a violation as a one-sentence conclusion in her response to defendants' memorandum in support of the motion to dismiss. Again, unless her complaint is amended to include constitutional violations specifically enumerated with supporting facts and allegations thereof, jurisdiction of this court cannot be exercised with respect to a damage action against a federal official under either a *Bivens* theory or a § 2410(a) waiver of sovereign immunity.

IT IS THEREFORE ORDERED THAT:

1. Defendants' motion to dismiss plaintiff's second claim for relief in the amended complaint (action for "inequitable conveyance") for failing to state a claim upon which relief can be granted is denied.

2. Defendants' motion to dismiss plaintiff's second claim for relief in the amended complaint pursuant to the Anti-Injunction Act is denied.

3. Defendants' motion to dismiss plaintiff's second claim for relief in the amended complaint for lack of subject matter jurisdiction is denied, however, plaintiff has twenty days to amend her complaint.

4. In the event plaintiff fails sufficiently to amend her complaint defendants' motion to dismiss for lack of subject matter jurisdiction shall be granted with respect to any money damage claim and denied with respect to any equitable relief or action to quiet title.